[L.A. No. 32308. Jan. 7, 1988.]

UNITED OUTDOOR ADVERTISING CO., INC., Plaintiff and Respondent, v.
BUSINESS, TRANSPORTATION AND HOUSING AGENCY, Defendant and Appellant.

■■■■■■

■■■■■■

■■■■■■

COUNSEL

Joseph A. Montoya, Gordon S. Baca, Melvin R. Dykman and Charles E. Spencer, Jr., for Defendant and Appellant.

Hugh R. Coffin and Pizer & Michaelson for Plaintiff and Respondent.

OPINION

**MOSK, J.**—We are called upon to apply a provision of the Outdoor Advertising Act (Bus. & Prof. Code, § 5200 et seq.) that permits the placement of billboards along certain types of highways in areas "zoned under authority of state law primarily to permit industrial or commercial activities" (*id.*, § 5205). We conclude that the billboards proposed herein, which are to be erected on sites where commercial activities are allowed simply upon issuance of a conditional use permit, do not meet the requirements of the Outdoor Advertising Act.

The Town of Baker is an oasis of humanity in the vast expanses of the Mojave Desert. Local governance for this unincorporated community of some 600 people is provided by San Bernardino County. Once a remote outpost, Baker is now accessible by Interstate Highway 15 from Los Angeles and Las Vegas. The highway constitutes the northwestern boundary of the East Mojave National Scenic Area. Interstate 15 actually bypasses Baker, carving out a small strip of land between the highway and the town referred to as "Baker Island." It is here that plaintiff proposes to place five illuminated metal billboards.

Plaintiff obtained "site approval" from the county for the advertising structures, and applied to defendant Business, Transportation and Housing Agency [hereafter the Agency] for billboard permits. The Agency rejected the application because it determined that site approval did not create "an

area zoned . . . primarily to permit industrial or commercial activities." Plaintiff petitioned the superior court for a writ of mandate to compel the Agency to issue the permits. The court granted the writ, and the Court of Appeal affirmed. It noted that the Agency's position had "everything to commend it" as a matter of logic, but that the unique system of land use controls in the San Bernardino desert compelled a contrary conclusion. We disagree.

## I.

The Highway Beautification Act of 1965 established national standards for the control of advertising displays along interstate and primary highway systems. (23 U.S.C. § 131.) In enacting the law, Congress declared that its aim was to control the erection and maintenance of billboards in order to protect the public investment in highways, to promote the safety and recreational value of travel, and to preserve the surrounding natural beauty. (*Id.,* § 131(a).)

To avoid a reduction in the federal aid highway funds to which it would otherwise be entitled, a state must provide for "effective control" of billboards. (*Id.,* § 131(b); see *South Dakota* v. *Volpe* (D.S.D. 1973) 353 F.Supp. 335.) Such control permits the erection and maintenance of certain types of displays—primarily directional signs and those advertising the sale of real estate or commercial activities on the property on which they are located—in virtually any location. (*Id.,* § 131(c).) Congress also provided for the needs of the billboard industry, which derives income mainly by leasing space on advertising displays unrelated to the property on which they stand, by allowing the states to permit outdoor advertising in areas zoned industrial or commercial under authority of state law. (*Id.,* § 131(d).)

The Legislature responded to the Highway Beautification Act by passing the Outdoor Advertising Act (Bus. & Prof. Code, § 5200 et seq., hereafter the Act).[1] No advertising display may be placed in an area covered by the Act without a permit from the state Director of Public Works. (§ 5350.) A permit must issue if the request fully complies with the terms of the Act and does not violate any other state law. (§ 5358.)

Aside from some exceptions not relevant here,[2] advertising displays are permitted along the highway only in "business areas." (§ 5408.) In order to

---

[1] All subsequent statutory references, unless otherwise noted, are to the Business and Professions Code.

[2] Section 5405 permits directional and other official signs, advertising signs for the sale or lease of property upon which they are located, and some others. These signs are not restricted to business areas and will not further concern us.

comprise part of a business area, a site must fit two criteria. First, it must be within 1,000 feet of the nearest edge of a commercial or industrial activity. Second, the site must be "zoned under authority of state law primarily to permit industrial or commercial activities." (§ 5205.) The sole question in the case at bar is whether the latter prong of the definition has been met. If so, plaintiff is entitled to a permit for its displays.

The County of San Bernardino has zoned the billboard sites "DL," or "Desert Living." This zone allows certain residential and agricultural uses as a matter of right. Commercial or industrial uses require site approval, which is the equivalent of a conditional use permit. The granting of such approval is an administrative procedure that often occurs without a hearing, as apparently happened here.

In addition, Baker is one of several desert communities that are labeled a "Desert Special Service Center" or a "DSSC" on the county's general plan. A DSSC may offer services to highway travelers and residents of the desert; it may be a convenience center for recreational activities; or it could consist of a commercial enclave on a military base. Baker, with approximately 600 residents and a fair number of business enterprises, is one of the larger DSSC's; others may consist of little more than the meeting of two roads.[3]

## II.

The Agency contends that the parcels are not in an area "zoned . . . primarily to permit commercial or industrial activities" within the meaning of section 5205, and consequently that it properly denied plaintiff's application for a billboard permit. The contention is meritorious.

We initially observe that the Agency is the entity charged with the administration of the Act. Its construction of section 5205 is therefore entitled to great weight. (*Nelson* v. *Dean* (1946) 27 Cal.2d 873, 880-881 [168 P.2d 16, 168 A.L.R. 467]; *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756-757 [151 P.2d 233, 155 A.L.R. 405].) And we should be mindful of the fact that if an outdoor advertising permit is granted and its removal later required by law, the state or federal government may be

---

[3] An affidavit by Stanley E. Lancaster, a long-time employee of the Department of Transportation, reports the results of a survey of 15 DSSC's in the Baker area. Five of these consist of vacant land around a highway intersection or of one or two residences and a similar number of marginal businesses. Ludlow, for example, has an indicated population of 75 people and supports 3 service stations, one or more of which may be defunct, a food store and a coffee shop. Fenner has an indicated population of 25 but no commercial activities. The junction of Cima Road and Interstate 15 has three residences and a gasoline station. Obviously the commercial nature of some of the DSSC's is, at best, potential.

required to pay compensation. (23 U.S.C § 131(g).) Permits should therefore be issued with requisite caution. But even absent these considerations, both the language and intent of the statute compel us to agree with the Agency's understanding of the Act.

 Section 5205, as stated above, requires commercial or industrial activities to be the "primary" uses in the zone. A primary use is one foremost in importance. For example, the county's commercial zones are designed in the first instance to allow business enterprises and are thus primarily commercial even though they may incidentally permit housing. Most of the desert in San Bernardino County is zoned DL. In that zone, as we have seen, certain residential and agricultural uses are permitted as a matter of right, but multiple-family residential structures and commercial or industrial uses require site approval. The fact that certain residential and agricultural uses need no prior approval by the county, while commercial and industrial uses do, is strong evidence that these are the primary uses allowed in the DL zone. Indeed, the appellation "Desert Living" itself negates the suggestion that the zone is primarily commercial or industrial.

Moreover, the use of the adverb "primarily" in section 5205 plainly implies the Legislature contemplated that industrial or commercial activity would be the main uses in the zone. In other words, the Legislature intended to refer to traditional commercial and industrial zones, in which such uses predominate.[4] If San Bernardino's DL zone were construed to authorize as "primary" uses not only agriculture and housing but also commercial and industrial activities, there would be virtually no secondary or excluded uses. Such a construction would deprive the word "primary" of any significance.

The purpose of the Act confirms this understanding of the definition of "business area." The Legislature did not intend to eliminate outdoor advertising entirely on the state's highways. Rather, it chose to concentrate billboards on those portions of the roadside that were already bordered by industrial plants and commercial enterprises. In such a setting billboards would least detract from the scenic beauty of the surrounding landscape. Certainly most of San Bernardino's vast DL zone, with its isolated commer-

---

[4] Federal regulations support this conclusion: "A zone in which limited commercial or industrial activities are permitted as an incident to other primary land uses is not considered to be a commercial or industrial zone for outdoor advertising control purposes." (23 C.F.R. § 750.708 (d).) The Highway Beautification Act of 1965 (23 U.S.C. § 131) and regulations adopted pursuant to its authority are relevant to an understanding of the Outdoor Advertising Act because the Legislature designed the state statute to accommodate federal requirements. (See § 5416; see also *People* ex rel. *Dept. of Transportation* v. *Harris* (1982) 128 Cal.App.3d 264, 267 [180 Cal.Rptr. 148].)

cial and industrial activities, is not the legislatively contemplated setting for outdoor advertising.

Nor can it seriously be argued that because an individual parcel has obtained site approval for an outdoor advertising display, it is "zoned" primarily to permit a commercial activity. Section 5205 plainly envisions that there be actual appropriate *zoning*. ▪ Site approval or a conditional use permit is an exception to a general zoning category (see Gaylord, *Zoning: Variances, Exceptions, and Conditional Use Permits in California* (1958) 5 UCLA L.Rev. 179, 193; *Tustin Heights Assn.* v. *Bd. of Supervisors* (1959) 170 Cal.App.2d 619, 626 [339 P.2d 914]) and does not create a new zone (*Essick* v. *City of Los Angeles* (1950) 34 Cal.2d 614, 622-623 [213 P.2d 492]; *Hawkins* v. *County of Marin* (1976) 54 Cal.App.3d 586, 591 [126 Cal.Rptr. 754]). Furthermore, it is merely an administrative act that can often be undertaken by officials who have no direct accountability to the voters and without an opportunity for community input. Finally, such piecemeal land use regulation would contravene the Legislature's intent to limit billboards to areas of concentrated commercial and industrial activity. This goal cannot be accomplished by requiring simply one existing commercial or industrial activity within 1,000 feet and the granting of a conditional use permit.

Viewing site approval as commercial zoning may also run afoul of federal regulations. Generally, state action that zones certain areas commercial or industrial will be accepted by the federal government for purposes of the Highway Beautification Act. (23 U.S.C. § 131(d).) But the zoning must have independent validity. Action that is not part of comprehensive zoning and is intended primarily to permit outdoor advertising structures is not recognized for outdoor advertising control purposes. (23 C.F.R. § 750.708 (b).)

▪ The site approval in this case was granted solely to permit billboards on the parcels. The effect of the county's action is therefore not to place advertising structures in areas that the county has independently determined to be especially well suited for commercial and industrial pursuits, but rather to permit the placement of billboards in a location that has not been so zoned by the board of supervisors. If site approval were held to be the equivalent of commercial zoning, each billboard would in essence create the commercial zone into which it is to blend, thus violating the federal rule that zoning may not be created primarily to permit billboards if it is to be recognized for outdoor advertising purposes.

### III.

Plaintiff next relies on the fact that the Baker parcels are within a location that the county general plan has identified as a "Desert Special Service

Center." A DSSC is clearly not a zone, but instead designates isolated areas in the desert that might have some commercial potential but do not warrant zoning for a specific land use. Rather than zoning the areas commercial, the county has retained the DL zone and deals with development in DSSC's on a site-by-site basis by the use of conditional use permits (i.e., by site approval). This technique purportedly allows the county flexibility and enables it to restrict development to that actually needed.

Plaintiff reasons that because the parcels are in a DSSC and have obtained site approval for a commercial activity, they are in the desert equivalent of a commercial zone. We cannot concur with this analysis. In the first place, the DSSC designation is conferred by the general plan and is not a zoning category. As part of the general plan it does not bestow on landowners the right to engage in commercial activities, but is instead a "statement of development policies" (Gov. Code, § 65302), part of a "constitution for all future developments" (*Neighborhood Action Group* v. *County of Calaveras* (1984) 156 Cal.App.3d 1176, 1183 [203 Cal.Rptr. 401]). It is the zoning laws that regulate the geographic allocation and permissible uses of land. (*Ibid.*) The county's description of the DSSC in its general plan confirms this: it characterizes the label as temporary, not meant to be a permanent feature of the county's planning scheme; rather, the DSSC label will be replaced by appropriate land use categories as community plans are developed. In contrast, zoning is intended to represent a considered, specific, and lasting implementation of the broad statements of policy of the general plan. (See Gov. Code, §§ 65302, 65800.) Section 5205's requirement that an area be "zoned" in a particular way contemplates the detailed land use decisions reflected by zoning and not the broad and temporary designations of a general plan, which amount only to a possibility of future rezoning for commercial uses.

The Legislature's concern that a location be "zoned" to permit commercial or industrial activity is also aimed at guaranteeing that there be a sufficient amount of such activity, or the realistic potential therefor, that a local government would see fit to take deliberate steps to zone it accordingly, thereby providing for commercial development as a matter of right. The DSSC, as we have seen, merely anticipates that the county may at some time take such action. In this context it is relevant that portions of some DSSC's have, in fact, been zoned commercial; indeed, it appears that an adjacent tract in Baker Island itself has been so zoned. Thus not only can the county rezone DL areas within a DSSC—when appropriate—to allow commercial uses, but it apparently does not hesitate to do so when the need arises.

For the purpose of defining a business area, moreover, the DSSC suffers from an inherent lack of precision. All the DSSC's, ranging from a barren intersection to a true community stretching several miles along the highway, are identified on the general plan of San Bernardino County by circles of equal radius. It is thus evident that the circle in this case is meant to refer to Baker only in a symbolic sense, i.e., it indicates that commercial activities might be allowed through site approval somewhere in the general area of Baker, but it is not meant to set the specific boundaries of such activities. Unlike a zone, which delimits a well defined geographic area, the circle on the general plan no more represents the precise boundaries of a present or future commercial area than the dot or square on a map of California represents the exact size and shape of Baker or any other community.

Even if the circle around Baker were taken to represent a perfectly round quasi-zone of business activity, it is quite improbable that the entire area should be considered the equivalent of a commercial or industrial zone. Certainly the DSSC designation cannot mean that all of Baker will eventually be zoned commercial or industrial, and the Agency cannot be expected to predict which parcels will be so zoned until a community plan is drawn up. It thus cannot reasonably issue a billboard permit until the more precise distinctions drawn by a zoning ordinance have been enacted by the governing body of the county.

The additional factor of site approval cures none of these defects. Site approval, which as we have seen is usually simply an administrative process, is no substitute for the deliberate implementation of the general plan, following community input, that zoning by the legislative branch of a local government represents. Nor does site approval designate with precision the specific parts of the DSSC that are primarily commercial. At best, site approval means that a particular business is permitted in an area by administrative action; it does not delimit an area of the DSSC in which commercial or industrial activities will almost surely materialize. At worst, the approval—as in this case—is for the advertising displays themselves and thus raises the possibility that such approval itself may create the commercial zone into which the billboard is meant to blend.

Finally, site approval does not guarantee that there is so much present or future commercial activity in a DSSC that it would ordinarily merit a commercial zone. We have noted that some DSSC's are almost entirely

undeveloped. (Fn. 3, *ante.*) A remote junction harboring a dusty service station, a small cafe, and a defunct mine would not generally justify a commercial zone and does not constitute the conglomeration of true business enterprises in which the Legislature intended to allow the placement of billboards. It is outposts of this sort, conjuring images of the grizzled prospector or the eccentric hermit, that draw many travelers to the nearly barren desert, and it is here that illuminated billboards would be most incongruous. Plaintiff's proposed construction of the Act would undermine the effective control of billboards by allowing their placement in any DSSC, no matter how marginal its commercial potential, as long as site approval had been obtained for at least one such activity.[5]

We conclude that the DSSC designation on the general plan, even combined with the DL zone and site approval for a commercial activity, does not convert the area into a de facto commercial zone. The designation is too imprecise to function effectively as a type of zoning, nor was it intended to do so. Furthermore, allowing billboards in DSSC's without appropriate zoning does not comply with the legislative intent of concentrating outdoor advertising in clusters of relatively significant entrepreneurial endeavor.

Plaintiff maintains that our conclusion will subvert the county's sensitive control of commercial development in desert regions through the site approval process because the county will be encouraged to rezone many areas to permit commercial and industrial activities as of right. We believe this eventuality unlikely. First, the demand for such activities appears minimal. And second, even if the county rezones parts of Baker commercial, nothing hinders its retention of reasonable control over the implementation of particular projects within such a zone.

Nor can the requirements of section 5205 necessarily be met by plaintiff or another outdoor advertiser persuading the county to rezone the parcels commercial. The Act does not simply condition the issuance of a billboard permit on having applicants jump through the additional hoop of obtaining an appropriate zoning change from the county. As we have seen, zoning enacted to permit billboards is not recognized for outdoor advertising control purposes. (23 C.F.R. § 750.708(b).) What the Act contemplates is that plaintiff will locate its displays in an area which, for reasons independent of a desire to permit billboards, has obtained the mandated zoning. Under

---

[5]Of course, the billboards would also have to be located within 1,000 feet of an existing commercial or industrial activity.

these circumstances, wholesale rezoning of the desert appears an improbable prospect.

The judgment of the Court of Appeal is reversed with directions to reverse the trial court's judgment granting the writ of mandate.

Lucas, C. J., Broussard, J., Panelli, J., Arguelles, J., Eagleson, J., and Stone (Steven J.), J.,* concurred.

Respondent's petition for a rehearing was denied February 24, 1988. Kaufman, J., did not participate therein.

---

*Presiding Judge, Court of Appeal, Second Appellate District, Division Six, assigned by the Chairperson of the Judicial Council.