Opinion
 

 MOORE, J.
 

 Plaintiff Trisha Denton sued Greenhouse Apartments and the City of Fullerton alleging she was raped because defendants failed to warn her of another nearby sexual assault that occurred shortly before she was attacked. The city moved for summary judgment arguing it owed plaintiff no legal duty and was immune from suit under Government Code section 845. The lower court granted the motion and entered judgment for the city. We affirm.
 

 Facts
 

 In the early evening hours of August 10, 1988, a woman was sexually assaulted in a laundry room of the apartment complex where plaintiff lived. When the victim resisted, the assailant fled, entering the apartment leased to plaintiff and closing the door behind him.
 

 The assault victim contacted the police, and Officers Yettaw and Mitterholzer of the Fullerton Police Department went to the complex to investigate the incident. The officers and victim went to the apartment the assailant had been seen entering. Yettaw knocked on the front door, received no response, and determined the door was locked. He saw nothing unusual about the front door. The officers walked around the apartment checking the windows and doors and observed no signs of forced entry. Yettaw and Mitterholzer decided not to attempt to enter the apartment.
 

 
 *1055
 
 The officers contacted the apartment complex’s management, and learned plaintiff lived in the apartment. Yettaw dialed a telephone number listed in plaintiff’s rental agreement, but it was out of service. The rental agreement also listed a vehicle belonging to plaintiff’s son. Mitterholzer ran a registration check on the vehicle and unsuccessfully attempted to locate it in the parking lot. The officers took no further action.
 

 Plaintiff arrived home from work around 10 p.m. that night. A short time after she entered her apartment, the front door opened and a man entered holding a gun. When plaintiff asked the man how he opened the front door, he sarcastically replied, “Maybe it was unlocked.” At gunpoint, the man led plaintiff to the garage where they entered her car and left. After driving around for 20 to 25 minutes, the man parked the vehicle and raped plaintiff.
 

 Plaintiff’s first amended complaint alleged the police officers investigating the prior assault were informed the assailant had entered plaintiff’s apartment when fleeing and notified of plaintiff’s identity. In addition, the amended complaint alleged the officers knew or should have known plaintiff was not home at the time of the prior assault, was unaware of its occurrence, and that she was dependent upon them to warn her about the incident.
 

 The lower court granted defendant city’s motion for summary judgment and entered judgment accordingly.
 

 Discussion
 

 I. Scope of Review
 

 Initially, we consider a procedural issue presented by the manner in which this case reached this court. Generally, motions for summary judgment present the question of whether “ ‘there is any issue of material fact to be tried ....’”
 
 (Salasguevara
 
 v.
 
 Wyeth Laboratories, Inc.
 
 (1990) 222 Cal.App.3d 379, 383 [271 Cal.Rptr. 780], quoting
 
 Hepp
 
 v.
 
 Lockheed-California Co.
 
 (1978) 86 Cal.App.3d 714, 717 [150 Cal.Rptr. 408]; see also Code Civ. Proc., § 437c, subd. (c);
 
 Centinela Hospital Assn.
 
 v.
 
 City of Inglewood
 
 (1990) 225 Cal.App.3d 1586, 1595 [275 Cal.Rptr. 901].) But the issue of whether the police had a legal duty to warn plaintiff presents a question of law. “The existence of ‘duty’ is a question of law. [Citation.] ‘[L]egal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done.’ [Citation.]”
 
 (Thompson
 
 v.
 
 County of Alameda
 
 (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701], quoting
 
 Tarasoff
 
 v.
 
 Regents of
 
 
 *1056
 

 University of California
 
 (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)
 

 Nonetheless, a motion for summary judgment by a defendant has been held to necessarily include a test of the sufficiency of the complaint and is treated, in effect, as a motion for judgment on the pleadings.
 
 (Centinela Hospital Assn.
 
 v.
 
 City of Inglewood, supra,
 
 225 Cal.App.3d at p. 1595;
 
 Blanch
 
 v.
 
 Young
 
 (1984) 152 Cal.App.3d 1016, 1019 [200 Cal.Rptr. 9];
 
 C. L. Smith Co.
 
 v.
 
 Roger Ducharme, Inc.
 
 (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483].) Therefore, although the parties presented evidence on whether the investigating officers had a duty to warn plaintiff, we will treat the issue as a question of law.
 

 II. Failure to Warn
 

 Several cases have considered the circumstances under which a special relationship can arise between the police and individual members of the public. Specifically, the issue is whether the police investigation of the laundry room assault imposed on them an obligation to take reasonable steps to warn plaintiff she might be subject to a possible sexual assault. Plaintiff contends the answer is yes. We conclude the facts do not support the existence of a duty in this context.
 

 “As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if ‘(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person’s conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection.’ [Citations.]”
 
 (Davidson
 
 v.
 
 City of Westminster
 
 (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894].) Liability can also be imposed upon a “volunteer who, having no initial duty to do so, undertakes to come to the aid of another—the ‘good Samaritan.’ He is under a duty to exercise due care in performance and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other’s reliance upon the undertaking. [Citation.]”
 
 (Williams
 
 v.
 
 State of California
 
 (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137]. See also
 
 Von Batsch
 
 v.
 
 American Dist. Telegraph Co.
 
 (1985) 175 Cal.App.3d 1111, 1121 [222 Cal.Rptr. 239].)
 

 A review of the relevant case law supports the conclusion the police officers’ investigation of the prior sexual assault did not give rise to a duty to warn plaintiff of a potential danger to her. In
 
 Tarasoff
 
 v.
 
 Regents of University of California, supra,
 
 17 Cal.3d 425, the plaintiffs sued psychotherapists and police officers employed by a university for wrongful death. They alleged a
 
 *1057
 
 man being counseled by university therapists expressed his intent to kill their daughter. Although the campus police briefly detained the assailant at one therapist’s request, none of the defendants warned plaintiffs of the danger facing the victim. The trial court sustained demurrers to the complaint without leave to amend. The Supreme Court reversed as to the therapists, finding the complaint’s allegations established a special relation existed between them and the assailant and that “[s]uch a relationship may support affirmative duties for the benefit of third persons.”
 
 (Id.
 
 at p. 436.)
 

 However, the court affirmed the judgment as to the police defendants, concluding “they do not have any such special relationship to either [the victim] or to [the assailant] sufficient to impose upon such defendants a duty to warn respecting [the assailant’s] violent intentions. [Citations.] Plaintiffs suggest no theory and plead no facts that give rise to any duty to warn on the part of the police defendants absent such a special relationship. They have thus failed to demonstrate that the trial court erred in denying leave to amend as to the police defendants. [Citations.]”
 
 (Tarasoff v. Regents of University of California, supra,
 
 17 Cal.3d at p. 444, fn. omitted.)
 

 In
 
 Thompson
 
 v.
 
 County of Alameda, supra,
 
 27 Cal.3d 741, plaintiffs alleged defendant released a juvenile offender it knew posed a danger to young children without warning the juvenile’s mother, local police or the parents of other children living in the vicinity of the juvenile’s residence. After his release, the juvenile killed plaintiff’s son. The trial court sustained a general demurrer to the complaint without leave to amend and on appeal the Supreme Court affirmed. It held liability may be imposed only where “the released offender poses a predictable threat of harm to a named or readily identifiable victim or group of victims who can be effectively warned of the danger . . . .”
 
 (Id.
 
 at p. 758.) The court concluded warnings to the general public or neighbors about the offender’s dangerous propensities would be difficult and expensive to give and would probably stimulate only a minimal increase in safety measures.
 
 (Id.
 
 at pp. 755-757.) As for warning the local police, the court stated “warnings to the police . . . ordinarily would be of little benefit in preventing assaults upon members of the public by dangerous persons unless we were simultaneously and additionally to impose a concurrent duty on the police to act upon such warnings. As we noted in
 
 Tarasoff, supra,
 
 no such duty to act exists. [Citations.]”
 
 (Id.
 
 at p. 756.)
 

 Davidson
 
 v.
 
 City of Westminster, supra,
 
 32 Cal.3d 197, involved a woman stabbed in a public laundromat. She sued the local police department alleging it had the laundromat under surveillance for the purpose of catching the perpetrator who had previously committed similar crimes, including stabbing
 
 *1058
 
 another person the night before plaintiff was injured. Plaintiff claimed the police department was negligent in failing to warn or protect her from the assailant. The Supreme Court affirmed a dismissal based upon the sustaining of a demurrer without leave to amend, concluding no special relationship existed between plaintiff and the police. It rejected claims the police were subject to liability for either creating a foreseeable peril to the plaintiff or failing to exercise due care as volunteers.
 
 (Id.
 
 at pp. 206-208.) “Neither of these doctrines applies here. Obviously the peril to [the plaintiff] was not created by the officers. She was unaware of their presence and did not rely on them for protection. Their conduct did not change the risk which would have existed in their absence: There is simply no reason to speculate that anyone—. . . victim or assailant—would have acted differently had the officers not placed the laundromat under surveillance.”
 
 (Id.
 
 at p. 208.)
 

 Again, the Supreme Court rejected an assertion that merely because the police were aware of a potential danger to the plaintiff they had a duty to warn her of that peril. “The very facts of this case confirm us in our belief, voiced in
 
 Tarasoff
 
 [citation], that under such circumstances the recognition of a cause of action against police defendants, based on a duty to warn, would raise difficult problems of causation and public policy, [¶] Imposition of a duty to warn [the plaintiff], premised on the theory that she was a potential victim of a potential assailant, necessarily implies a general duty to warn other potential victims in the vicinity. [Citation.] While under some circumstances the police may conclude that such a course of conduct is prudent and necessary, our past decisions teach that it is inappropriate to impose such a duty—which may paralyze a neighborhood—under pain of tort liability. [Citation.] [¶] In sum, we conclude that no causes of action for negligence are stated by plaintiffs. Although the facts as alleged may establish that [the plaintiff], or indeed any other woman using the laundromat, was a reasonably foreseeable victim as in
 
 Tarasoff,
 
 that factor alone does not suffice to establish a special relationship with the officers imposing upon them a duty to warn or protect.” (32 Cal.3d at pp. 208-209.)
 

 Finally, in
 
 Von Batsch
 
 v.
 
 American Dist. Telegraph Co., supra,
 
 175 Cal.App.3d 1111, the plaintiff brought a wrongful death action against a burglar alarm company and the county alleging deputy sheriffs who went to the decedent’s business to investigate a possible break-in negligently carried out the investigation, thereby resulting in the decedent’s murder a few hours later at the hands of intruders. The trial court sustained the county’s demurrer to the complaint and dismissed the causes of action against it.
 

 The Court of Appeal affirmed. “The mere fact that officers responded to a burglar alarm at a business premises and proceeded to investigate did not
 
 *1059
 
 create a special relationship. [Citation.] Nor did the undertaking here of an investigation by officers create a special relationship giving rise to a duty to include specified actions—such as inspection of the roof—within its scope or to protect from future harm any particular individuals who might later arrive at the premises hours after the officers had left the scene. [¶] Under the Good Samaritan doctrine, law enforcement officers may voluntarily assume a protective duty towards a certain member of the public and undertake action on behalf of that person, thereby inducing reliance. Such a duty may arise ‘when an express promise to warn of a danger has induced reliance, or when the actions of the [officer] place a person in peril or increase the risk of harm.’ [Citations.] [¶] One cannot recover for
 
 ‘injuries caused by the failure of police personnel
 
 to respond to requests for assistance, the failure to investigate properly, or
 
 the failure to investigate at all, where the police had not induced reliance on a promise,
 
 express or implied, that they would provide protection. . . .’ [Citations.] [¶] A special relationship may also be predicated on detrimental reliance upon ‘the conduct of a police officer, in a situation of dependency, resulting] in detrimental reliance on him for protection.’ [Citation.] But, there must be an affirmative act which created the peril, contributed to, increased, or changed the risk or prevented other assistance. [Citations.]” (175 Cal.App.3d at pp. 1122-1123.)
 

 Here, no basis exists for imposing liability on the city because its police officers failed to inform plaintiff about the prior sexual assault. The police have no general duty to warn citizens of potentially dangerous persons even when they are informed by another person or entity that such an individual presents a danger to others.
 
 (Tarasoff
 
 v.
 
 Regents of University of California, supra,
 
 17 Cal.3d at p. 444.) The investigation of the prior assault did not create a special relationship between the police and plaintiff or other residents of the apartment complex.
 
 (Von Batsch
 
 v.
 
 American Dist. Telegraph Co., supra,
 
 175 Cal.App.3d at p. 1122;
 
 Antique Arts Corp.
 
 v.
 
 City of Torrance
 
 (1974) 39 Cal.App.3d 588, 591-592 [114 Cal.Rptr. 332].) The mere fact plaintiff was a foreseeable victim of a sexual assault also did not establish a special relationship creating a duty on the part of the police to warn her of the danger.
 
 (Davidson
 
 v.
 
 City of Westminster, supra,
 
 32 Cal.3d at p. 209.)
 

 Plaintiff was completely unaware of the prior incident and the police investigation of it. Thus, it cannot be argued she depended upon the police to properly warn her of any potential danger. The mere fact the police were aware of plaintiff’s identity and that she might be subject to harm is not, alone, sufficient to impose liability on them. Nothing the police did changed the risk that would have existed even if they had not investigated the earlier assault.
 
 (Davidson
 
 v.
 
 City of Westminster, supra,
 
 32 Cal.3d at p. 208;
 
 Von Batsch
 
 v.
 
 American Dist. Telegraph Co., supra,
 
 175 Cal.App.3d at p. 1123.)
 

 
 *1060
 
 Neither
 
 Mann
 
 v.
 
 State of California
 
 (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], nor the recent decision in
 
 Carpenter
 
 v.
 
 City of Los Angeles
 
 (1991) 230 Cal.App.3d 923 [281 Cal.Rptr. 500], support a different conclusion. In
 
 Mann,
 
 the plaintiff sued the state for personal injuries suffered when he was struck by a passing car on a freeway while standing next to his stalled car. A highway patrol officer stopped to investigate, placing his vehicle with its flashing lights to the rear of plaintiff’s car. However, after a tow truck arrived, the officer left without giving any warning or placing any protective flares on the roadway. The Court of Appeal held these facts were sufficient to establish the highway patrolman owed a duty to plaintiff. “Clearly plaintiff was dependent upon [the] [o]fficer . . . .”
 
 (Mann
 
 v.
 
 State of California, supra,
 
 70 Cal.App.3d at p. 780.) The Supreme Court has construed the decision as follows:
 
 “Mann,
 
 properly read, is a simple application of the ‘good Samaritan’ doctrine.”
 
 (Davidson
 
 v.
 
 City of Westminster, supra,
 
 32 Cal.3d at p. 208.)
 

 In
 
 Carpenter,
 
 plaintiff testified against a defendant in a criminal prosecution. Later, he was shot, allegedly in retaliation for his testimony. Plaintiff sued the city claiming its police department had received reliable information the defendant in the criminal case had threatened his life, but failed to warn him of the danger. The Court of Appeal found the city owed plaintiff a duty of care, noting the police had requested his assistance in the criminal prosecution and one officer induced in plaintiff a false sense of security by telling him the criminal defendant was just a “street punk” and he had nothing to worry about.
 
 (Carpenter
 
 v.
 
 City of Los Angeles, supra,
 
 230 Cal.App.3d at pp. 932-933.)
 

 Here, the police did nothing to increase the risk of harm to plaintiff. Furthermore, no basis existed for plaintiff to rely on the police to warn her of the prior assault and the potential danger to herself.
 

 Plaintiff also argues the police had a duty to obtain assurances from the apartment complex management that it would either inspect plaintiff’s apartment or warn her of the potential danger, and that the record supported an inference the police “lulled” the management into not taking action. This argument is without merit for several reasons.
 

 First, the complaint does not allege facts supporting an imposition of liability on this basis. It alleges only that plaintiff was dependent on the police because they investigated the prior assault, learned the assailant had fled into plaintiff’s unit, identified plaintiff as the occupier of the unit, and knew or should have known she might be in danger of being sexually assaulted herself. Second, since the police had no independent duty to warn plaintiff of the potential danger, they consequently had no obligation to make
 
 *1061
 
 sure the apartment manager would do so. Finally, plaintiff’s assertion that the record supports an inference the investigating officers “lulled” the apartment manager into inaction is simply not correct. Except to review the rental agreement for plaintiff’s identity and attempting to call a telephone number listed on the agreement, there apparently was no further interaction between the police and management. These facts alone do not support an inference the apartment complex’s management felt it had no duty to take further action.
 

 In her opening brief, plaintiff suggests the lower court should have continued the hearing on the summary judgment motion to permit her to depose the apartment complex’s manager on this point. But it is clear from the record plaintiff is aware of no facts to support a claim the police did or said anything which dissuaded the apartment complex’s management from warning her of the potential danger. (Code Civ. Proc., § 437c, subd. (h).) Thus, it was not necessary for the lower court to continue the hearing or grant plaintiff leave to amend her complaint to attempt to state a cause of action on this theory.
 

 We conclude the lower court did not err by granting the city’s motion and entering judgment in its favor.
 
 [1]
 

 Disposition
 

 The judgment of the lower court is affirmed. Defendant shall recover its reasonable costs of suit.
 

 Crosby, Acting P. J., and Wallin, J., concurred.
 

 [1]
 

 In light of our conclusion on the issue of “duty,” we need not discuss whether the city would be immune from suit under Government Code section 845.