[No. E008649. Fourth Dist., Div. Two. Feb. 25, 1993.]

THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff, Cross-defendant and Respondent, v.
OUTDOOR MEDIA GROUP, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Paul E. Fisher for Defendant, Cross-complainant and Appellant.

Joseph A. Montoya, Joseph C. Easley and O. J. Solander for Plaintiff, Cross-defendant and Respondent.

Ronald W. Beals as Amicus Curiae.

OPINION

DABNEY, Acting P. J.—Outdoor Media Group (OMG) appeals from a judgment following the grant of a motion for summary judgment in favor of the People of the State of California, acting by and through the Department of Transportation (Caltrans) on Caltrans's complaint for a permanent injunction. OMG also appeals from the dismissal of its cross-complaint.

FACTS

In May 1988, OMG applied to Caltrans for permits to erect two billboards within 500 feet of the interchange of I-15 and I-215 in Murrieta, an unincorporated area of Riverside County. OMG submitted its applications under the California Outdoor Advertising Act (Bus. & Prof. Code[1], § 5200 et seq.) (the Act). Caltrans determined that the area where OMG sought to erect the billboards was outside an incorporated city and not in an urban area. Caltrans therefore refused to issue the permits on the ground the proposed billboards violated section 5408, subdivision (d).[2] OMG nonetheless erected the billboards without permits at such location.

Caltrans issued citations for the billboards in November 1988. When OMG failed to remove the billboards, Caltrans filed a complaint seeking an injunction to compel the removal of the billboards. Caltrans alleged the billboards had been erected without the required state permits in an area where state law did not permit billboards.

In its answer, OMG admitted it had erected and maintained the billboards without first obtaining permits from Caltrans. OMG also filed a cross-complaint for a writ of mandate seeking to compel Caltrans to issue permits for the billboards. OMG alleged that Caltrans had a mandatory duty to issue the permits and had wrongfully denied OMG's application.

Caltrans moved for summary judgment on its complaint on the ground the billboards were illegal because OMG had not obtained permits before erecting them. OMG opposed the motion on the ground it was entitled to the

[1]All further statutory references are to the Business and Professions Code unless otherwise indicated.

[2]"No advertising display shall be placed within 500 feet of an interchange . . . of an interstate highway . . . if the . . . highway is located outside the limits of an incorporated city and outside the limits of an urban area. . . . 'Urban area,' as used in this subdivision, shall be determined in accordance with Section 101(a) of Title 23 of the United States Code." (§ 5408, subd. (d).)

permits, and Caltrans had a mandatory duty to issue the permits. OMG also argued estoppel, alleging that Caltrans had a past practice of issuing permits retroactively.

The trial court stated that the issues raised in OMG's cross-complaint were irrelevant. The court granted the motion for summary judgment and dismissed the cross-complaint. OMG appeals, contending: (1) the court had no authority to grant summary judgment without resolving all contested issues in both the complaint and the cross-complaint; (2) OMG's opposition to the motion for summary judgment raised triable issues of fact; (3) the issues raised by the cross-complaint constituted a defense to the complaint; and (4) the court erred in denying OMG's motion to continue the hearing.

## DISCUSSION

### Standard of Review

Summary judgment is proper only when the papers submitted show there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ A plaintiff seeking summary judgment must sustain the burden of proof on all theories of its complaint and must also negate all issues raised by the answer and cross-complaint. (*Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 120 [44 Cal.Rptr. 268].)

### Dismissal of Cross-complaint

■ OMG contends that Caltrans introduced no evidence to negate the issues raised by OMG's cross-complaint, and summary judgment was therefore improper. However, courts have held that a defendant's motion for summary judgment necessarily includes a test of the sufficiency of the complaint, and the motion is treated as a motion for judgment on the pleadings. (See, e.g., *Denton* v. *City of Fullerton* (1991) 233 Cal.App.3d 1636, 1640 [285 Cal.Rptr. 297].) We see no reason the same standard should not apply to a plaintiff's motion for summary judgment when a cross-complaint has been filed.

The trial court, in granting summary judgment, did not explicitly determine that the cross-complaint failed to state a sufficient claim for relief. However, such a determination is necessarily implied from the trial court's dismissal of the cross-complaint. (See *Centinela Hospital Assn.* v. *City of Inglewood* (1990) 225 Cal.App.3d 1586, 1595-1596 [275 Cal.Rptr. 901].) Thus, on appeal, the court must determine whether the cross-complaint

failed as a matter of law to state facts sufficient to constitute a cause of action.

Under section 5358,[3] Caltrans is required to issue a permit if the application complies with all provisions of the Act and the billboard does not violate any other state law. ██ An unhappy applicant can challenge the denial of a permit by a petition for a writ of mandate before erecting the sign in violation of the Act. (See *United Outdoor Advertising Co.* v. *Business, Transportation & Housing Agency* (1988) 44 Cal.3d 242, 245 [242 Cal.Rptr. 738, 746 P.2d 877].) ██ OMG's cross-complaint was a petition for a writ of mandate to challenge the denial of the permits. OMG argues that until the issues raised in its cross-complaint were determined, Caltrans was not entitled to an injunction compelling removal of the billboards.

The cross-complaint alleged that OMG had applied for permits to erect two billboards, and "Said applications were in full compliance with all provisions of the Act and all other provisions of state law. Specifically, the proposed locations are in business areas and within 1,000 feet from a business or commercial activity in an urban area of the County of Riverside. As a consequence, Respondents had a mandatory duty under § 5358 of the Act to issue permits permitting these advertising displays within ten (10) days after processing of the applications."

The cross-complaint further alleged that Caltrans wrongfully denied the applications for permits on the ground the proposed locations were rural rather than urban: "Said refusals were arbitrary, capricious and contrary to law in that the proposed locations are in an area that substantially comports with the definition of 'urban area' as used in the Act and Section 101(a) of Title 23 of the United States Code. Petitioner is therefore entitled to issuance of these permits as a matter of law."

In ruling on a motion for judgment on the pleadings, the court must accept as true all factual matters pleaded in the complaint or cross-complaint. Under this standard, OMG's cross-complaint should not have been dismissed. At least on its face, the cross-complaint states a valid cause of action. (This is not to say that the issue raised in the cross-complaint—entitlement to a permit for billboards at the described locations—could provide any defense to Caltrans's complaint for an injunction. It did not; as we discuss below,

---

[3]"When the application is in full compliance with this chapter and if the advertising display will not be in violation of any other state law, the director or his authorized agent shall, within 10 days after compliance and upon payment by the applicant of the fee provided by this chapter, issue a permit to place the advertising display for the remainder of the calendar year in which the permit is issued." (§ 5358.)

Caltrans was entitled to an injunction once OMG erected the billboards without permits.)

We next turn to the grant of the injunction.

*Nuisance Per Se*

Citing section 5350,[4] Caltrans contends that even a wrongful denial of OMG's permit applications would provide no defense to the complaint for an injunction. Caltrans moved for summary judgment on its complaint on the ground that the billboards had been erected without Caltrans permits. OMG admitted it had not obtained permits to erect or maintain the billboards. The billboards were thus public nuisances as a matter of law. (§ 5461;[5] see also *People* ex rel. *Dept. Pub. Wks.* v. *Adco Advertisers* (1973) 35 Cal.App.3d 507, 511 [110 Cal.Rptr. 849].) A billboard erected without a permit is in prima facie violation of the Act and is subject to removal.

Courts have established that it is within the police power to declare an act or condition to be a nuisance for regulatory purposes. (*Amusing Sandwich, Inc.* v. *City of Palm Springs* (1985) 165 Cal.App.3d 1116, 1129 [211 Cal.Rptr. 911].) "A legislatively declared public nuisance constitutes a nuisance per se against which an injunction may issue without allegation or proof of irreparable injury." (*Adco, supra*, 35 Cal.App.3d at p. 511.) In *Adco*, a billboard was erected in compliance with then-current statutes. However, shortly after the billboard was erected, the laws changed, and the billboard became nonconforming. The appellate court upheld an injunction compelling removal of the billboard. (*Ibid.*)

" 'Where the Legislature has determined that a defined condition or activity is a nuisance . . . [t]he function of the courts in such circumstances is limited to determining whether a statutory violation in fact exists, and whether the statute is constitutionally valid.' [Citation.]" (*Amusing Sandwich, Inc., supra*, 165 Cal.App.3d at p. 1129.) OMG did not challenge the constitutional validity of the Act in the trial court and admitted that a statutory violation existed. As a matter of law, Caltrans was thus entitled to an injunction compelling removal of the billboards.

Moreover, the cross-complaint did not provide a defense to the complaint for an injunction. As discussed in *Amusing Sandwich, Inc., supra*, when a

---

[4]Section 5350 states, "No person shall place any advertising display within the areas affected by the provisions of this chapter in this state without first having secured a written permit from the director or from his authorized agent."

[5]Section 5461 states, "All advertising displays which are placed or which exist in violation of the provisions of this chapter are public nuisances and may be removed by any public employee as further provided in this chapter."

nuisance per se is shown to exist, the only issues before the trial court in an action to enjoin the nuisance are whether a statutory violation exists and whether the underlying statutes are constitutionally valid. OMG's cross-complaint was not directed to either of these issues. Thus, as a matter of law, the cross-complaint did not provide any defense to Caltrans's complaint for an injunction.

*Denial of Motion for Continuance*

■ OMG contends the trial court erred in refusing its request for a continuance. OMG argues that it was deprived of the opportunity to discover evidence to support its position. "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." (Code Civ. Proc., § 437c, subd. (h).)

In support of its request for a continuance, OMG provided the declaration of its attorney detailing discovery which he considered necessary to respond to the motion for summary judgment. Such discovery included: (1) deposing a Bureau of the Census official to determine the correct characterization of the area where the billboards were located; (2) deposing Caltrans's chief of the highway outdoor advertising program to refute Caltrans's contention that it had no authority to issue permits retroactively; and (3) obtaining supplemental responses to requests for admissions and interrogatories.

To be entitled to a continuance, the party opposing the motion for summary judgment must show that its proposed discovery would have led to "facts essential to justify opposition." Here, the only issue as to the motion for summary judgment or the complaint for an injunction was the continuing maintenance of the billboards without permits.[6] The discovery which OMG proposed was irrelevant to this issue, and therefore could not have led to facts essential to the opposition to the motion. ■ "[T]he presence of factual conflict will not defeat a motion for summary judgment unless the fact in dispute is a material one. [Citation.]" (*Angelus Chevrolet* v. *State of California* (1981) 115 Cal.App.3d 995, 1002 [171 Cal.Rptr. 801].) ■ The trial court did not abuse its discretion in denying OMG's motion for a continuance.

---

[6]As noted above, Caltrans did not make any showing on the factual merits of the cross-complaint. Therefore, the only issue raised in the motion for summary judgment as to the cross-complaint was the sufficiency of the pleadings. (See *Denton, supra,* 233 Cal.App.3d at p. 1640.) That issue required no discovery; the court could look to the face of the pleadings to determine whether the cross-complaint stated a cause of action.

*Section 5485*

■ OMG contends Caltrans's interpretation of section 5350 is contradicted by section 5485,[7] which contemplates that permits may be issued retroactively conditioned on payment of a $10 penalty after a billboard has been erected.

In response to this argument, we note that the remedy of a $10 penalty under section 5485, subdivision (b) is cumulative to other remedies provided by law. (§ 5465.[8]) "It is well established that an action by the Department of Transportation to abate a sign erected or maintained in violation of that act as a nuisance is a proper remedy. [Citations.]" (*People* ex rel. *Dept. of Transportation* v. *Harris* (1982) 128 Cal.App.3d 264, 267 [180 Cal.Rptr. 148]; see also *People* ex rel. *Dept. Pub. Wks.* v. *Golden Rule Church Assn.* (1975) 49 Cal.App.3d 773, 777 [122 Cal.Rptr. 596].)

*Estoppel*

■ OMG next contends that Caltrans had a past practice of issuing permits retroactively and should be estopped from enjoining billboards erected without permits in reliance on that past policy.

Equitable defenses such as estoppel do not apply because the Act defines OMG's violation as a nuisance per se. "[N]either the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public.[Citations.]" (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826 [186 P.2d 124].)[9]

The court in *United Outdoor Advertising Co.*, *supra*, 44 Cal.3d at page 245 explained another public policy implicit in the Act: "To avoid a reduction in

[7]At the time of the trial court's action, section 5485 stated, "(b) The permit fee for an advertising structure for the original permit and for each annual renewal thereof is ten dollars ($10), except where the applicant has placed or maintained the structure without a valid, unrevoked, and unexpired permit therefor, the fee for any issuance of the first permit thereafter is twenty dollars ($20), ten dollars ($10) of which is the penalty."

[8]"The remedies provided in this chapter for the removal of illegal advertising displays are cumulative and not exclusive of any other remedies provided by law." (§ 5465.)

[9]Section 5226 states the public policy of the Act: "The regulation of advertising displays adjacent to any interstate highway . . . as provided in Section 5405 is hereby declared to be necessary to promote the public safety, health, welfare, convenience and enjoyment of public travel, to protect the public investment in such highways, to preserve the scenic beauty of lands bordering on such highways, and to insure that information in the specific interest of the traveling public is presented safely and effectively, recognizing that a reasonable freedom to advertise is necessary to attain such objectives. . . ."

the federal aid highway funds to which it would otherwise be entitled, a state must provide for 'effective control' of billboards. [Citations.]" In *People ex rel. Dept. Pub. Wks. v. Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804, 813 [114 Cal.Rptr. 499], the court declared, "[T]o apply estoppel would effectively nullify a strong public policy adopted for the benefit of the public and we view the illegal placing of billboards in violation of the Outdoor Advertising Act in the same category as that involved in permission to expand a nonconforming use. Equitable principles therefore will not protect Ryan from being required to remove the billboards in the case at bench."

OMG cannot argue that the billboards were lawfully erected. " 'Lawfully erected' means, in reference to advertising displays, advertising displays which were erected in compliance with state laws and local ordinances in effect at the time of their erection or which were subsequently brought into full compliance with state laws and local ordinances, . . . ." (§ 5216.1.) Section 2401 of title 4, chapter 6 of the California Code of Regulations states, "A display cannot legally be placed until after a permit has issued for it."

The trial court did not err in granting the motion for summary judgment on Caltrans's complaint.

*Sanctions for Frivolous Appeal*

On our own motion, we issued an order requesting the parties to provide additional briefing on (1) whether sanctions should be imposed on OMG and its appellate counsel for a frivolous appeal, and (2) the appropriate amount of such sanctions if they were determined to be appropriate.[10]

*Frivolous Appeal*

In a recent opinion, this court discussed the standards which govern the imposition of sanctions for frivolous appeals: "Our law recognizes the danger that the possibility of sanctions will deter counsel from vigorously and responsibly advocating their client's cause. To minimize that danger, any definition of a frivolous appeal must be sufficiently narrow 'to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous. . . .'[Citation.]

---

[10]We also issued an order to show cause to OMG's former attorneys. Following a hearing, we determined that there was insufficient cause to impose sanctions on OMG's former attorneys.

"Thus, an appeal, though unsuccessful, should not be penalized as frivolous if it 'presents a unique issue which is not "indisputably" without merit' [citation], involves facts which are 'not amenable to easy analysis in terms of existing law' [citation], or makes a reasoned 'argument for the extension, modification, or reversal of existing law' [citations].

"The Supreme Court has addressed this concern by establishing two independent standards for determining whether an appeal is frivolous, one subjective and one objective: '[W]hen it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment —or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.' [Citation.]" (*Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1074-1075 [275 Cal.Rptr. 594].)

Several courts have recognized that sanctions may be awarded for an appeal that was only partially frivolous. (*Bach* v. *McNelis* (1989) 207 Cal.App.3d 852, 875-876 [255 Cal.Rptr. 232]; *M.E. Gray Co.* v. *Gray* (1985) 163 Cal.App.3d 1025, 1040, fn. 15 [210 Cal.Rptr. 285]; *Maple Properties* v. *Harris* (1984) 158 Cal.App.3d 997, 1009-1011 [205 Cal.Rptr. 532].)

In the seminal case of *Maple Properties*, the court explained, "While it is true that *Flaherty*[11] cited *Anders*[12] for the proposition that 'an appeal is not frivolous if "any of the legal points [are] arguable on their merits" ' . . . , the reference to *Anders* was used in the context of ' "whether any reasonable person would agree that the *point* is totally and completely devoid of merit, and, therefore, frivolous." [Citations.]' . . . The use of the word 'point' rather than the word 'appeal' to describe whether the appeal is frivolous would support the proposition that an appeal may be partially frivolous if a point on appeal has no merit and [is] therefore the proper subject of sanctions." (*Maple Properties, supra,* 158 Cal.App.3d at p. 1010.) The court therefore concluded, "Sanctions for an appeal which is partially frivolous are appropriate if the frivolous claims are a *significant* and *material* part of the appeal." (*Ibid.*)

 The instant case certainly meets this standard. OMG's cross-complaint was not a defense to an injunction requiring the removal of the billboards. In fact, OMG now contends that Caltrans should have sought an injunction first and proceeded to the merits of the cross-complaint later. Here, however, OMG sought and obtained a stay of the injunction pending

[11]*In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179].
[12]*Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396].

resolution of the issues on appeal. Thus, OMG continued to derive revenues from its illegal signs during the pendency of this appeal. The challenge to the dismissal of the cross-complaint was only incidental. Under *Maple Properties*, the court is justified in imposing significant sanctions even though the appeal did raise one valid appealable issue.

The law is clear that courts may enjoin the continued operation of a nuisance. (*Harris, supra,* 128 Cal.App.3d at p. 267.) The law is also clear that equitable considerations such as estoppel provide no defense in an action to enjoin a nuisance. (*Ryan Outdoor Advertising, Inc., supra,* 39 Cal.App.3d at p. 813.) As we discussed above, under the clear meaning of the Act, the cross-complaint does not suggest any viable defense to the complaint for an injunction. We conclude the appeal is substantially frivolous, and sanctions should be imposed.

*Amount of Sanctions*

Code of Civil Procedure, section 907[13] and California Rules of Court, rule 26(a)[14] govern the imposition of sanctions for a frivolous appeal. When we determine the appropriate amount of sanctions, we are guided by the policy underlying Code of Civil Procedure section 907. " 'The object of imposing a penalty for frivolous appeal is twofold—to discourage the same, as well as to compensate to some extent for the loss which results from delay. [Citation.] . . . [¶] In determining the amount of damages which should be awarded in this case for a frivolous appeal we should consider the facts with relation thereto and the effect of the delay.' [Citations.]" (*National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 526 [258 Cal.Rptr. 506].)

The damages for which we may order compensation include the costs and attorney fees incurred by the respondent in defending against the appeal and the expense incurred by the appellate court in processing, reviewing, and deciding the appeal. These damages are compensatory: the People should not be asked to bear the burdens of OMG's actions. Counsel for Caltrans has filed a declaration stating that the costs and attorney fees incurred in defending against the appeal total $860.05. In addition, Caltrans incurred

---

[13]"When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (Code Civ. Proc., § 907.)

[14]"Where the appeal is frivolous or taken solely for the purpose of delay . . . , the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require." (Cal. Rules of Court, rule 26(a).)

costs and attorney fees totalling $747.25 in connection with the proceedings before the referee. We award both these amounts to Caltrans as compensatory sanctions. The expense to the appellate court in processing, reviewing and deciding an average appeal totals $5,908.26. (See *Cohen* v. *General Motors Corp.* (1992) 2 Cal.App.4th 893, 897 [3 Cal.Rptr.2d 619].) We order OMG's counsel to pay these amounts as compensatory sanctions.

 When we impose sanctions, we are not limited to compensatory considerations; rather, we may also require the payment of sums sufficient to discourage future frivolous litigation. (*Summers, supra,* 225 Cal.App.3d at p. 1079.) For instance, in *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96 [260 Cal.Rptr. 369], the court ordered the appellant to pay $20,000 in additional sanctions to the clerk of the court for the prosecution of a particularly "costly, time-consuming and frivolous appeal." (*Id.,* at p. 136.)

In *City of Bell Gardens* v. *County of Los Angeles* (1991) 231 Cal.App.3d 1563 [283 Cal.Rptr. 91], the court ordered the county to pay the respondents' legal fees and costs totalling over $135,000. In addition, the court ordered $25,000 payable to the state's general fund as sanctions "to reimburse the taxpayers for the cost of processing this appeal, [and] to deter future frivolous litigation by the county." (*Id.,* at p. 1574.)

To deter similar frivolous appeals in the future, the penalty must be sufficient to remove any financial incentive to flout the law. In this case, OMG erected its billboards unlawfully in 1988 and has continued to derive revenues from the operation of the billboards during the pendency of the appeal. Thus, we conclude the penalty should be calculated based on OMG's gross revenues from the billboards.[15]

Because the record contained no evidence from which the appropriate amount of the penalty could be determined, we appointed the superior court to sit as a referee and set the matter for an evidentiary hearing on OMG's gross revenues from the operation of the billboards from the date of the filing of the notice of appeal in this matter through the date the billboards were removed. The referee has reported his finding to us that OMG's gross revenues for the relevant period were $165,565. The referee also took evidence and made findings on OMG's expenses connected with the sign,

---

[15]In supplemental briefing, OMG has argued that to impose sanctions based on its revenues would impose a constructive trust on the proceeds of its operations, and such an action is unprecedented in this state. We disagree with OMG's characterization of our action. We use OMG's proceeds as a bench mark by which we can determine the amount of a penalty sufficient to deter the filing of a frivolous appeal in the future. Constructive trust principles are irrelevant to this determination.

including lease payments to the landowner on whose property the signs were situated, the costs of erecting, maintaining and removing the signs, overhead and sales commissions. After considering those findings and reviewing the evidence on which they were based, we determine that the appropriate amount of sanctions is OMG's gross revenues during the maintenance of this frivolous appeal, the sum of $165,565. We decline to allow credit for the expenses of conducting what was, in effect, an illegal business.[16]

## DISPOSITION

The judgment of dismissal of the cross-complaint is reversed.

The grant of an injunction is affirmed. As discussed, we find the appeal from the grant of an injunction is devoid of merit and frivolous. As partial sanctions, we order OMG's counsel to pay Caltrans's costs and attorney fees on appeal in the amount of $1,607.30, to be paid within 30 days after the issuance of the remittitur. We order, as further sanctions, that OMG's counsel shall pay to the clerk of this court the sum of $5,908.26, representing the cost of processing an average civil appeal in this court, to be paid within 30 days after the issuance of the remittitur. Finally, as further sanctions, we order OMG to pay to the state general fund the sum of $165,565, payable to the State of California, to be forwarded to this court within 30 days after the issuance of the remittitur.

---

[16]In imposing such a penalty, we recognize that a governmental entity may not recover the cost of law enforcement, absent authorizing legislation. In *People* ex rel. *Van de Kamp* v. *American Art Enterprises, Inc.* (1983) 33 Cal.3d 328 [188 Cal.Rptr. 740, 656 P.2d 1170], the court stated, "[A]lthough California's general nuisance statute expressly permits the recovery of damages in a public nuisance action brought by a specially injured party, it does not grant a damage remedy in actions brought on behalf of the People to abate a public nuisance." (*Id.,* at p. 333, fn. 11.)

In *County of San Luis Obispo* v. *Abalone Alliance* (1986) 178 Cal.App.3d 848 [223 Cal.Rptr. 846], the court held that the general statutory provisions of permitting a county to sue and be sued (Gov. Code, § 23004) and requiring a county to seek damages for negligent, wilful or unlawful damage to public property (Gov. Code, § 53069.6) "d[id] not prevail over the specific statutes governing abatement of a public nuisance. Nor by their terms do they authorize suits to recover costs incurred in exercising the police power." (*Abalone Alliance, supra,* at pp. 860-861.)

However, in our view, these cases do not restrict the right of appellate courts to exercise control over abuse of the court system by imposing sanctions under Code of Civil Procedure section 907 and California Rules of Court, rule 26. When sanctions are imposed for a frivolous appeal, they are not imposed to reimburse the costs of abatement of a nuisance, but to punish a party's conduct in abusing the court system and to deter future abuses. Thus, the cases cited above and the underlying statutes do not limit the right of the courts to protect the integrity of their functioning through the use of sanctions in appropriate cases.

As required by section 6089, subdivision (b), a copy of this opinion shall be forwarded to the State Bar.

McKinster, J., concurred.

**TIMLIN, J.,** Concurring.—With one exception I agree with the majority's discussion and I concur completely in the disposition. I do disagree, however, with the majority's procedural analysis in arriving at its conclusion that the trial court erred in dismissing Outdoor Media Group's (OMG) cross-complaint. The majority first states that the law provides that a *defendant's* summary judgment motion necessarily includes a test of the sufficiency of the complaint and, under certain circumstances, it therefore may be treated as a motion for judgment on the pleadings. I agree with this statement. But the majority then boldly states there is no reason why the same "standard" should not apply to a *plaintiff's* motion for summary judgment on its complaint when a cross-complaint has been filed, i.e., a plaintiff's summary judgment motion may be construed as a motion for a judgment on the pleadings as to any cross-complaint naming plaintiff as cross-defendant. It then proceeds to construe respondent's motion for summary judgment on the complaint for injunctive relief to also be a motion for judgment on the pleadings as to OMG's cross-complaint for mandamus, and determines that the cross-complaint does state such a cause of action.

I recognize that when a plaintiff moves for summary judgment, it must establish that there are no triable issues of material fact as to each element of each of its causes of action, and must negate at least one element of every affirmative defense asserted by defendant by way of answer or cross-complaint. If there is a cross-complaint, plaintiff must also establish that, as to those allegations in the cross-complaint which raise defenses to the causes of action alleged in the complaint, there are no triable issues of material fact. (*Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 120 [44 Cal.Rptr. 268].)[1]

In my opinion, however, the *Hayward Union* case does not hold or suggest that a court may treat a plaintiff's motion for summary judgment on the complaint to be a motion for judgment on the pleadings as to any existing cross-complaint against it. In many cases, cross-complaints will allege facts and law which are not related to any of the allegations of the complaint and further will raise no defenses to the complaint to which plaintiff's summary

---

[1]The above statements in the text of the opinion summarize the law as it existed when the court made its challenged rulings in this case. Effective January 1, 1993, subdivision (n) was added to the Code of Civil Procedure, section 437c, which lays out the burdens of producing evidence on a plaintiff's or defendant's motion for summary judgment. These provisions do not apply here.

motion is directed. In those cases in which a cross-complaint raises defenses to the complaint, *Hayward Union*'s narrow rule applies. The majority cites no authority or persuasive rationale that such rule may be expanded by analogy to encompass the principle that plaintiff's summary judgment motion may be construed as a motion for judgment on the pleadings as to the cross-complaint.

Further, the majority's approach is not necessary to the resolution of the issue whether the trial court erred in dismissing the cross-complaint, because respondent did suggest indirectly that it was seeking "a judgment on the pleadings" when it requested as item No. 5 in its "Notice of Motion for Summary Judgment": A "Judgment of Dismissal of defendant's crosscomplaint re petition for writ of mandate." In spite of such request, the record reveals that respondent and OMG considered the motion to be solely for a summary judgment in their briefing and argument to the trial court, with OMG's counsel referring to the cross-complaint only as to those allegations therein which raised a defense to the allegations in the complaint. After the court granted respondent's motion for summary judgment, OMG's counsel, almost as an afterthought, said, "For clarification, may I ask what the disposition on the cross-complaint is?" The court responded: "The cross-complaint is . . . without merit. . . . the cross-complaint was irrelevant to this proceeding[]." Subsequently it dismissed the cross-complaint by judgment.

I believe the court's comments regarding the cross-complaint can reasonably be understood to be an implied determination that the cross-complaint did not state a cause of action for mandamus relief. However, in my opinion, the court's apparent reason for that determination, that the cross-complaint was irrelevant to the summary judgment proceeding, was error. The cross-complaint was relevant insofar as its allegations may have raised defenses regarding the allegations in the complaint.

I, therefore, agree with the majority that the trial court, as shown by its comments that the cross-complaint was without merit and its dismissal of the cross-complaint, impliedly determined that the cross-complaint failed to state sufficient facts to allege a cause of action for traditional mandamus. I further concur with the majority's analysis and conclusion that the cross-complaint does state a valid cause of action for mandamus relief and that the trial court erred in dismissing it.

Petitions for a rehearing were denied March 24, 1993, and appellant's petition for review by the Supreme Court was denied June 3, 1993.