[No. B171217. Second Dist., Div. Eight. Jan. 7, 2005.]

MILLENNIUM CORPORATE SOLUTIONS, Plaintiff and Appellant, v. TERRI PECKINPAUGH et al., Defendants and Respondents.

---

**COUNSEL**

Callahan & Blaine, Caroline A. Molloy and Solange E. Ritchie for Plaintiff and Appellant.

Gauntlett & Associates, David A. Gauntlett, James A. Lowe and Andrew M. Sussman for Defendants and Respondents.

---

**OPINION**

**BOLAND, J.—**

## SUMMARY

In this case, an insurance brokerage firm appeals from the grant of a preliminary injunction in favor of four former employees sued by the firm for unfair business practices and misappropriation of trade secrets. Both sides sought preliminary injunctive relief relating to the possession of confidential client files and information, and both motions were heard on the same date. The firm filed no opposition to the employees' application. The trial court denied the firm's application, and granted the employees' application as unopposed.

The firm appeals from the court's grant of injunctive relief to the employees, contending it was deprived of its right to a fair hearing on the employees' preliminary injunction request. The firm claims it filed no opposition in the trial court because the court had denied parts of the employees' request for a temporary restraining order, including the requested return of client files to the employees, and the firm therefore believed the issue was moot at the time of the hearing on the preliminary injunction. Finding no merit in the firm's claim, we affirm the trial court's order.

We further find the appeal was frivolous, and grant the employees' motion for sanctions.

## FACTUAL AND PROCEDURAL HISTORY

Millennium Corporate Solutions is an insurance brokerage business with offices in Pasadena and Irvine. Millennium hired Terri Peckinpaugh as an insurance agent producer in October 2002, and hired Pat Carreathers, Gail Miley and Rosalie Hakewessell in similar capacities in January 2003. Peckinpaugh and the others were recruited by Millennium's then-chief executive officer, Douglas Judson. All four had been in the business of insurance sales for 25 years or more, and each had a significant "book of business." Peckinpaugh specialized in commercial insurance, while the others specialized in customized personal lines of insurance for business executives, celebrities and other wealthy individuals.

On September 3, 2003, Millennium terminated the employment of Peckinpaugh, Carreathers, Miley and Hakewessell. On September 5th, Millennium filed a complaint against all four (collectively, Peckinpaugh or the Peckinpaugh defendants), alleging causes of action for unfair business practices, misappropriation of trade secrets, interference with contract, and seven other causes of action. Several days later, Millennium sought a temporary restraining order (TRO), asserting Peckinpaugh had misappropriated Millennium's confidential and proprietary client information, files and marketing data, all of which were considered trade secrets. Millennium submitted declarations from its president, Sergio Bechara, and two Millennium employees, Frank Marrone and Rebecca Marrone. Bechara's declaration stated he terminated the Peckinpaugh defendants, "having observed and discovered that [they] had surreptitiously taken, converted, stole and misappropriated Millennium's confidential and proprietary client information . . . ." He further stated he had observed storage boxes filled with Millennium's client files on dollies in the Peckinpaugh defendants' offices, ready to be transported out of the office, and telephoned the police to prevent any further misappropriation. The Marrone declarations similarly stated they had observed Peckinpaugh and the others "each take, convert, steal and misappropriate" Millennium's confidential files on September 3, 2003. Millennium sought to enjoin Peckinpaugh from further using or disclosing Millennium's trade secret information and interfering with Millennium's client relationships, and sought the immediate return of all Millennium's confidential client information.

On September 11, 2003, the trial court granted a TRO, enjoining Peckinpaugh from disclosing Millennium's confidential and proprietary client information and interfering with Millennium's contractual and economic relations with its clients and employees. The court's order to show cause (OSC) set a briefing schedule and hearing date on Millennium's application for a preliminary injunction, in which Millennium also sought to enjoin the

use of Millennium's confidential and proprietary information and sought the return to Millennium of all records of such information.

On September 17, 2003, Peckinpaugh filed an ex parte application to vacate the TRO and continue the hearing on the OSC. The Peckinpaugh defendants asserted they had taken no files or other property of Millennium's and had no access to its offices and hence no ability to obtain any files. They also explained they were unable to oppose the TRO because their counsel had a conflict of interest and no time remained to obtain alternate counsel. The court did not dissolve the TRO, but set a new schedule and hearing date as requested.

On September 29, 2003, Peckinpaugh filed a cross-complaint alleging unfair and fraudulent business practices, misappropriation of trade secrets under the Uniform Trade Secrets Act, and other causes of action. On the same day, Peckinpaugh filed an ex parte application for a TRO and OSC, seeking to restrain Millennium from making false statements to third parties about stolen files; destroying or copying client documents; and using or disclosing Peckinpaugh's confidential and proprietary client information. The application also requested an order mandating the return to the Peckinpaugh defendants of their client files and personal property, and the return of money paid to Millennium by their clients for premium payments Millennium allegedly had not made. Declarations from each of the Peckinpaugh defendants, as well as from several of their clients, accompanied the application. Millennium opposed the ex parte application. Millennium argued the proposed TRO unconstitutionally restrained Millennium's free speech rights; the term "clients" in the proposed TRO was vague and overbroad; and all personal items had already been returned to Peckinpaugh.

The trial court issued a TRO and OSC on September 29, 2003. The temporary restraining order required the return of Peckinpaugh's personal property. It also enjoined Millennium from telling third parties that files were stolen by Peckinpaugh from the Pasadena office, and from destroying or copying client information belonging to Peckinpaugh that remained on the premises and in Millennium's control. In a separate item, the court also granted the order to show cause with a schedule for filing opposition and reply papers and a hearing, set for October 22, 2003, the same date as the hearing on Millennium's application for a preliminary injunction.

On October 15, 2003, the Peckinpaugh defendants filed their opposition to Millennium's preliminary injunction application. The opposition included excerpts from the depositions of Sergio Bechara, Frank Marrone and Rebecca Marrone, which Peckinpaugh argued contradicted their declarations in support of Millennium's TRO application. The opposition also included second

declarations from each of the Peckinpaugh defendants. They argued Millennium failed to establish either a probability of success on the merits or a balance of the equities in Millennium's favor. They pointed to evidence that the Peckinpaugh defendants did not take any of Millennium's files and no longer had access to Millennium's workplace, and that Millennium had improperly taken the files of their clients, whose insurance needs they had filled for years before joining Millennium. The Peckinpaugh defendants specifically argued they were likely to prevail at trial on their cross-complaint "and to obtain an injunction requiring Millennium to return their files and personal property to them—as they request the Court to do by their own Order to Show Cause." The second declarations from each of the Peckinpaugh defendants specifically listed the clients whose files they brought with them to Millennium and wanted Millennium to return to them.

Millennium filed no opposition to Peckinpaugh's preliminary injunction application.

On October 22, 2003, Peckinpaugh filed a reply memorandum of points and authorities, pointing out, inter alia, that Millennium had filed no opposition. The reply papers included a declaration from Douglas Judson, the former Millennium chief executive officer who hired the Peckinpaugh defendants. Judson stated he had assured them when he hired them that their books of business continued to be their own.

After argument at the hearing on October 22, 2003, the court discharged the TRO issued against the Peckinpaugh defendants and denied Millennium's application for a preliminary injunction, "on the grounds that [Millennium had] not presented evidence showing probability of prevailing at trial."[1] The court then turned to Peckinpaugh's application, observing no opposition to it had been filed. Millennium's counsel responded that the September 29 OSC "speaks to only making statements to third parties who inquire about defendant or defendants' client files" and "mentions nothing else in the order to show cause. That's why [Millennium] didn't oppose that. That's what the T.R.O. provides." In response to the court's questions, Millennium's counsel acknowledged he had seen the proposed preliminary injunction, and that he had had it "before today." Counsel contended that "procedurally there is a problem," that it was not appropriate to submit a proposed injunction, and that he was "working off of" the order to show cause and that only those issues were to be raised at the hearing. Counsel for Peckinpaugh responded

---

[1] Millennium argued it was undisputed that files were sitting in storage boxes on dollies in the Peckinpaugh defendants' offices ready to be moved on September 3, 2003, and that under the Labor Code it was presumed everything acquired by the employee during employment belongs to the employer. The Peckinpaugh defendants argued that the uncontradicted admissible evidence before the trial court was that the clients belonged to them.

that, although the court had granted a more limited TRO than they sought, "the issues we wanted heard at the preliminary injunction were raised loudly and clearly: the issue of who's entitled to those files . . . ."

The trial court then discharged the TRO against Millennium and granted Peckinpaugh's application for preliminary injunction "as unopposed." The injunction restrained Millennium from reviewing, copying or maintaining copies of information contained in files for specified insurance clients of each of the Peckinpaugh defendants; disclosing or disseminating information in those files; and asserting that any of the Peckinpaugh defendants had stolen any of those files. In addition, Millennium was required to return the files of the specified clients, as well as certain items of personal property, to the Peckinpaugh defendants.

On October 24, 2003, Millennium filed a notice of appeal from the order granting Peckinpaugh a preliminary injunction against Millennium. Peckinpaugh timely filed a motion for sanctions against Millennium, contending the appeal was intended to delay the return of Peckinpaugh's files and was frivolous.[2]

## DISCUSSION

### A. *Millennium's appeal is without merit.*

Millennium contends this court should direct the trial court to vacate the preliminary injunction and hold a new hearing, because it "was not given a fair opportunity to oppose [Peckinpaugh's] order to show cause," and "did not receive adequate notice of the hearing."[3] The substance of Millennium's argument is that the terms of the TRO granted by the court to Peckinpaugh were limited in scope, and that only those TRO provisions were at issue at the hearing on the preliminary injunction. We find no merit in Millennium's claims.

---

[2] Two other motions were filed with this court on which rulings were deferred. Peckinpaugh filed a motion for calendar preference, which is denied as moot, and Millennium filed a motion to augment the record on appeal. Millennium's motion directs the court's attention to a trial court ruling on July 7, 2004, denying Peckinpaugh's motion for summary adjudication on most issues. The motion is denied. Augmentation of the record on appeal would be improper, as the trial court's ruling on summary adjudication is irrelevant to the propriety of a preliminary injunction issued eight months earlier.

[3] Millennium also requests reinstatement of the TRO it obtained against Peckinpaugh. However, Millennium filed no appeal from the trial court's discharge of the TRO or its denial of Millennium's application for a preliminary injunction.

First, Peckinpaugh's ex parte application sought an order restraining Millennium from using the client information at issue, and mandating return of the client files, as well as restraining Millennium from making false statements and requiring it to return personal property. We can discern no reason why the grant of limited relief in the TRO should somehow operate to change the scope of the injunctive relief Peckinpaugh requested.

Second, the court's order contains two separate numbered items. The first is addressed to the terms of the TRO, and the second is addressed to the order to show cause. The latter simply states: "The Order to Show Cause re preliminary injunction is granted with the following schedule . . . ." Millennium's purported assumption that only the terms in the TRO (item 1) remained at issue was, at best, both imprudent and contrary to common sense.

Third, as Millennium points out, both Millennium's and Peckinpaugh's requests for preliminary injunctions raised the same issues. Indeed, in their October 15, 2003 opposition to Millennium's application, filed two weeks after the TRO against Millennium issued, the Peckinpaugh defendants expressly argued they were likely to prevail at trial and to obtain an injunction requiring Millennium to return their files, "as they request the Court to do by their own Order to Show Cause."[4]

■ In short, we cannot credit Millennium's claim that it "reasonably believed" that, because the objectionable relief sought in Peckinpaugh's application—the requirement to turn over the client files—was denied in the TRO, that requested relief was no longer at issue. No basis exists for reversing the trial court's order.

B. *Millennium's appeal was frivolous and Peckinpaugh's motion for sanctions is granted.*

Peckinpaugh filed a timely motion for sanctions on appeal, seeking $24,765 in attorney fees for time spent on the appeal (briefing, appellate

---

[4] Millennium also argues that, had it had the opportunity, it could have presented evidence rebutting Peckinpaugh's showing on her preliminary injunction application. However, Millennium does not suggest the nature or content of any further evidence. Millennium refers only to the Bechara and Marrone declarations, which accompanied its own TRO application, as the basis for rebutting Peckinpaugh's evidence. Those declarations, however, were obviously insufficient, as they failed to persuade the trial court to grant Millennium a preliminary injunction, a ruling from which Millennium has not appealed.

settlement conference, motions for sanctions and for calendar preference, and oral argument). This court notified the parties that it was considering the imposition of sanctions against Millennium and its counsel (Cal. Rules of Court, rule 27(e)), and Millennium filed an opposition. ■ We conclude sanctions are warranted. Millennium's appeal was frivolous because it indisputably had no merit—"any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179] (*Flaherty*).)

■ The principles guiding the determination whether an appeal is frivolous were described in *Flaherty, supra*, 31 Cal.3d at p. 650, and include both subjective and objective standards: "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit."[5] ■ The Supreme Court cautioned: "However, any definition [of the term 'frivolous'] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such appeals out of a fear of reprisals." (*Id.*, at p. 650) ■ Observing that the borderline between a frivolous appeal and a meritless appeal is vague, the Court stated that the difficulty of drawing the line " 'points up an essential corollary to the power to dismiss frivolous appeals: that in all but the clearest [of] cases it should not be used.' " (*Ibid.*, quoting *People v. Sumner* (1968) 262 Cal.App.2d 409, 415 [69 Cal.Rptr. 15].) The same is true for "the power to punish attorneys for prosecuting frivolous appeals: the punishment should be used most sparingly to deter only the most egregious conduct." (*Flaherty, supra*, 31 Cal.3d at pp. 650–651.)

This case involves a clear instance of an appeal that indisputably has no merit. No reasonable attorney, reviewing Peckinpaugh's ex parte application for a TRO and an order to show cause, could have failed to understand the

---

[5] *Flaherty* observed that the subjective and objective standards are often used together, "with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." (*Flaherty, supra*, 31 Cal.3d at p. 649.) In this case, Peckinpaugh argues that sanctions are appropriate both because the appeal indisputably has no merit and because it was taken for the purpose of delay, as the mandatory provisions of the injunction—requiring return of the client files—were automatically stayed by Millennium's appeal.

scope of the preliminary injunction Peckinpaugh sought. Millennium's failure to file an opposition is inexplicable, unless it had no opposition evidence to offer. Its subsequent appeal—on the ground Millennium "was not given a fair opportunity to oppose" the application—from the trial court's grant of Peckinpaugh's unopposed application is equally inexplicable, the more so since Millennium did not appeal the denial of its own application for a preliminary injunction, which raised the same issues.

Millennium's own opposition to Peckinpaugh's motion for sanctions demonstrates that no reasonable attorney could possibly see any merit in this appeal.

First, Millennium argues its appeal is not frivolous because it was "denied its due process right to present evidence" in opposition to Peckinpaugh's application. Millennium complains that the trial court granted a corrected preliminary injunction, "belatedly served on the morning of the hearing" rather than the proposed preliminary injunction that was served with the initial application. (This refers to the fact that the corrected injunction specifically enumerated the client files that were required to be returned to the Peckinpaugh defendants, while the initial proposed injunction did not.) Millennium asserts the trial court was alerted that the proposed corrected preliminary injunction was served without sufficient notice at the hearing, and that the trial court should have granted a continuance. This assertion is erroneous. The transcript of the hearing shows no assertion by Millennium that the corrected injunction was served without sufficient notice, and counsel conceded at oral argument that trial counsel did not request a continuance. Moreover, Millennium was on notice a week prior to the hearing, through the declarations of the Peckinpaugh defendants in opposition to Millennium's application, of the specific client files Peckinpaugh sought to have returned— the same enumeration included in the corrected injunction. The claim that this case involves "substantive due process concerns" because Millennium "was not given proper notice of the issues" to be addressed at the hearing is absurd.

Second, Millennium's opposition itself demonstrates that it had full notice of the issues to be addressed at the hearing. Peckinpaugh's motion for sanctions argues Millennium's appeal is at least partially frivolous because Millennium's opening brief sought reinstatement of its TRO, and thus reversal of an order it did not appeal. Millennium responds that it was merely arguing overlapping issues, and expressly admits that the issues raised in Millennium's and Peckinpaugh's preliminary injunction applications were the same: "The issues raised in [Peckinpaugh's] and Millennium's preliminary injunction orders are the same—both involve the use and disclosure of the

same confidential and proprietary client information, the same files and marketing data and restraint of interference of the economic and client relations which stemmed from those files and the return of personal property." Further, Millennium states: "The lower court realized that both Millennium's and [Peckinpaugh's] requests for preliminary injunctions raised the same issues. This is why the lower court changed the date of the hearing on Millennium's preliminary injunction to the same date . . . ." These assertions undercut Millennium's claim that it "was not given proper notice of the issues addressed during the October 22, 2003 hearing." In short, no reasonable attorney would have taken this appeal, which is "totally and completely without merit" (*Flaherty, supra*, 31 Cal.3d at p. 650), and sanctions are therefore proper.[6]

■ Code of Civil Procedure section 907 permits the reviewing court to add to the costs on appeal "such damages as may be just" when an appeal is frivolous. Those damages include the costs and attorney fees incurred by the respondent in defending against the appeal. (*People ex rel. Department of Transportation v. Outdoor Media Group* (1993) 13 Cal.App.4th 1067, 1081 [17 Cal.Rptr.2d 19].) Peckinpaugh has submitted declarations from its counsel, averring two lawyers spent the following time on this appeal, with fees totaling $24,045:[7]

| | |
|---|---|
| Briefing: | 40 hours at $240 per hour = $9,600.00 |
| | 12 hours at $375 per hour = 4,500.00 |
| Settlement conference: | 11 hours at $375 per hour = 4,125.00 |
| Sanctions motion: | 8 hours at $240 per hour = 1,920.00 |
| | 4 hours at $375 per hour = 1,500.00 |
| Oral argument: | 10 hours at $240 per hour = 2,400.00 |

These fees appearing reasonable, we award sanctions in the amount of $24,045 to the Peckinpaugh defendants for the attorney fees as described, for which Millennium and its counsel, Callahan & Blaine, are jointly and severally liable.

---

[6] Millennium also argues the Peckinpaugh defendants did not raise the issue of sanctions in their respondent's brief or in their prior motion to dismiss and therefore waived any request for sanctions. Millennium is mistaken. "If a party moves to dismiss the appeal, with or without a sanctions motion, and the motion to dismiss is not granted, the party may move for sanctions within 10 days after the appellant's reply brief is due." (Cal. Rules of Court, rule 27(e)(2).) Millennium's reply brief was due August 4, 2004, and Peckinpaugh's motion for sanctions was timely filed August 13, 2004.

[7] This total excludes three hours of time at $240 per hour for preparing a motion for calendar preference, as that motion was not granted.

## DISPOSITION

The order granting the preliminary injunction against Millennium Corporate Solutions is affirmed. The respondents are awarded their costs on appeal. In addition, sanctions are imposed against Millennium and its counsel, Callahan & Blaine, jointly and severally, in the sum of $24,045, payable to the Peckinpaugh defendants, who are to remit any part of the fees described in this opinion which remain unpaid to their counsel, Gauntlett & Associates. The sanctions imposed are to be paid within 30 days after the issuance of the remittitur.

Cooper, P. J., and Rubin, J., concurred.