Filed 8/16/16  Vega v. Tsuboi CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DAVID ROGER VEGA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>KARA MIEKO TSUBOI,<br><br>        Defendant and Respondent. | A146397<br><br>(San Francisco County<br>Super. Ct. No. FPT-15-376918) |

On June 4, 2015, representing himself, appellant David Roger Vega filed a petition to establish parentage.  The petition named as respondent Kara Tsuboi, and sought "visitation" and "child custody" of "kid Vega," born "9-4-2013," a "1 yr, 9 mo" old male.  The petition was signed under penalty of perjury.  Vega attached to his petition various declarations, one of which had 32 exhibits (A–M 20), exhibits that totaled 170 pages.

Hearing on Vega's petition was set for July 6.  On June 9, Vega filed an application for a reissuance, the effect of which was to cause the hearing to be continued to August 3.

On July 27, Tsuboi filed a response to the petition, accompanied by her declaration.  That declaration stated in a handwritten entry by Tsuboi that "the petitioner is *not* the father.  The father is my husband and the father of the child who was conceived during marriage."  Further, as "Supporting Information," Tsuboi declared that "Vega has been stalking me since 2010.  I have had multiple restraining orders against him.  There

1

has never been any contact, intimate or physical, with him and no chance he is the father."

Prior to the hearing, Tsuboi's counsel filed what she called a "Request for Judicial Review of Pleadings" and "Request for Dismissal of Entire Cause of Action." The request had a two and one-half page basis for the "requested relief," which we quote in its entirety:

"Petitioner is attempting to establish parentage of a child he refers to as KID VEGA, born September 4, 2013. *There is no "Kid Vega"—no such child exist[s].*

"Respondent did not give birth to *any* child on September 4, 2013, as alleged by Petitioner. Indeed, it would be biologically impossible for Respondent having given birth to her son Everett on July 25, 2013.

"Respondent never had a relationship of any kind with Petitioner. Respondent 'met' Petitioner through her employment with the Oakland A's when she briefly interviewed him as a fan at a game in 2010. Since then, Respondent has been stalked and harassed by Petitioner.

"*Indeed, by and through Petitioner's own Petition to Establish Parental Relationship, filed June 4, 2015, Petitioner has 'not been in close personal contact with [Respondent]' since 2010.* [Citation.] Instead, *Petitioner claims that, by way of an elaborate plan, and, a continuing hoax, Respondent stole his semen from a trash can inside of his home and inseminated herself, resulting in the alleged birth.* There are no facts or evidence offered by Petitioner to support his allegations, other than his own statements. Petitioner has provided no facts to substantiate the existence of this alleged child, Kid Vega, other than to provide a photo of a Respondent's son, Everett, claiming it to be Kid Vega.

"This case has a more complex history than the present petition, and one that the Unified Family Court should take into consideration *prior* to the Readiness Calendar, as Petitioner has a long history of stalking and harassing, stemming back to 2010,which has resulted in criminal and civil restraining orders, as well as Petitioner's involuntary

2

commitment.  *At the current time, Respondent has both a temporary Civil Harassment Order and a Criminal Protective Order against Petitioner.*

"A brief history of the Protective Orders includes:

"In July 2011, Respondent was given a *Civil Harassment Order* protecting her and her family from Petitioner by the Alameda County Superior Court.  The order was granted for a period of three (3) years.

"Petitioner violated the *Civil Harassment Order* on September 13, 2011.  As a result Respondent was given a *Criminal Protective Order* granted by the Alameda County Superior Court on September 15, 2011, protecting her and her family from Petitioner.  The order was granted for a period of three (3) years.  It was extended for another year after Petitioner violated the *Criminal Protective Order* on September 18, 2012.

"Upon Petitioner's motion, the *Criminal Protective Order* was terminated early on May 19, 2015.  Respondent was not advised of the early termination.  It is understood that the Court did not review the pleadings submitted by Petitioner in support of his request for the termination, but based it upon the oral motion.

"Within weeks of having the *Criminal Protective Order* terminated, Petitioner filed the present motion, claiming parentage of Respondent's child, born with her husband during marriage.  There are, as indicated above, no facts or evidence to support Petitioner's contention that he is the father of Respondent's son.  Indeed, a review of Petitioner's pleadings provides uncontroverted support for Respondent's deep-rooted concern that Petitioner suffers from mental health issues.

"Out of concern, Respondent has requested a new *Civil Harassment Order*.  Temporary orders have been granted and a hearing is scheduled for August 7, 2015 before the Alameda County Superior Court (See: Certified copy of *Civil Harassment Order* attached hereto as *Exhibit A*, and incorporated by reference [Certification on Page 5]).  In addition, the District Attorney is now seeking to re-instate the previously-terminated *Criminal Protective Order*; a temporary *Criminal Protective Order* has been

3

granted pending hearing on August 17, 2015 (See: *Criminal Protective Order* filed July 29, 2105, attached hereto as *Exhibit B* and incorporated by reference).

"CONCLUSION

"In light of the foregoing and all of the facts of this case, Respondent respectfully requests that the Court review the filed pleadings in advance of the August 3, 2015-scheduled Readiness Calendar, and dismiss the entire action with prejudice, as set forth in the concurrently provided/filed *Proposed Order* (a copy of which is attached hereto as *Exhibit C* and incorporated by reference)." (Bold type omitted.)

On August 3, the matter came on for hearing before the Honorable Monica Wiley, a hearing that was not reported. Following the hearing, Judge Wiley filed an order providing as follows:

"Having considered [X] the pleading and the [X] testimony provided to the Court, the Court makes the following orders:

"A) Petitioner's *Petition to Establish Parental Relationship* is dismissed with prejudice.

"B) Petitioner's *Request for Order re: Custody and Visitation* is dismissed with prejudice."

On September 22, Vega filed his notice of appeal.

Vega has filed a 51-page opening brief. Vega's brief cites no cases, and relies fundamentally on the Fifth and Fourteenth amendments to the United States Constitution, which Vega asserts "are the only laws/statutes/references that [he] will ever need."

Tsuboi filed a respondent's brief that includes a motion to dismiss the appeal and for an award of sanctions.

Vega's reply brief, 52 pages long, devotes some 14 pages to the issue of sanctions, 11 or 12 pages claimed "deceptive tactic[s]" in Tsuboi's brief, and then responds to one of the arguments in Tsuboi's brief that relied on the presumption of a child born during wedlock. This is what Vega says:

"Their entire position on these pages rests on two things as premise to argument for the dismissal being proper: (1) that the presumption of a marriage automatically

4

equals presumption of a child born during that marriage to be the offspring of the marriage couple, and (2) following directly from this, this presumption must be overcome with "*clear and convincing evidence*" of fatherhood of that child for a claimant like myself to assert a parentage claim (I will spare the codes here, given that this summary understanding is correct).

"Each of these individually contains a simple problem that makes them wholly non-applicable to this particular case. The first, most obvious one is that *there was never a marriage established with any reliable degree of certainty in the first place, whether honestly within my mind, nor in any reliable capacity that places upon me the obligation of respecting it as truth in seeking a parentage claim.*

"I know that the court will not want to hear this, but the biggest proof of this is the mere fact that the second violation of the order was committed because I honestly did not believe that this marriage was valid (Vol 2 51CT331 '*Exhibit F*', for the *actual* content of the letter again). But this is not merely a claim of ignorance. This is a claim of sabotage as well.

"With Ms. Tsuboi's long history of conducting herself as if in an unofficial 'work relationship' with me throughout 2011 leading up to this marriage, and showing increasing evidence of emotion invested in it after the alleged 'marriage' [citation], it is impossible to know that this isn't a hoax intended to fool her job and/or family. . . . Adding to this further is the fact that Exhibits like (the full color versions of) [Vol 3 51CT 496-515, '*S*'] show that even when Ms. Tsuboi has been awarded orders against me, her statements upon which they are based are stocked full of *outright lies, misrepresentations,* and *distortions.* As already demonstrated, in recent cases, these have only grown more blatant and easily observable over time, thereby constituting enough corroboratory '*evidence outside anyone's word*' to put any claim she makes in public to this 'marriage' in serious doubt.

"So in short . . . Ms. Tsuboi's word has no credibility anymore, if ever.

5

"Therefore, given the foregoing, the presumption of a marriage should have no effect on my ability to assert parentage, under CFC sections 7540, 7611, and the cited finding of *Dawn D. v. (Jerry K.)* (RB pgs 11-12)."

Nowhere does Vega show—indeed does not even attempt to show—that Judge Wiley did anything wrong. He has shown no error. His appeal must be rejected.

The most fundamental rule of appellate review is that an appealed judgment or order is presumed to be correct. " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Vega fails to demonstrate any error here.

Vega's brief also fails to present any argument or legal authority. So in the words of the leading appellate commentator: "When appellant asserts a point but fails to support it with reasoned argument and citations to authority, the court may treat it as *waived* and pass it without consideration. [*People v. Stanley* (1995) 10 [Cal.]4th 764, 793; *Salas v. California Dept. of Transp.* (2011) 198 [Cal.App.]4th 1058, 1074; see *EnPalm, LLC v. Teitler Family Trust* (2008) 162 [Cal.App.]4th 770, 775—issue deemed waived where appellants failed to support claim by argument, discussion, analysis or citation to record, or to include any trial proceedings in appellate record; *Stoll v. Shuff* (1994) 22 [Cal.App.]4th 22, 25—alleged error never discussed in body of opening brief 'not a serious effort to raise the issue on appeal' and thus waived . . . .]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 8:17.1, p. 8-6.)

As indicated, Tsuboi filed a request for sanctions, seeking an "award of all attorney's fees and costs reasonably incurred since the August 3, 2015 hearing, which total $11,968, plus an additional penalty of no less than $5,000." As noted, Vega's reply brief responded to the sanction issue at length. He also addressed the issue at oral argument, though offering no reason demonstrating that sanctions were not appropriate here.

6

Code of Civil Procedure section 907 provides that "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." And California Rules of Court, Rule 8.276, subdivision (a)(1) provides that a Court of Appeal may impose sanctions for "[t]aking a frivolous appeal or appealing solely to cause delay."

"[A]n appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts. Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650; see also, *Keitel v. Heubel* (2002) 103 Cal.App.4th 324, 337.)

As shown above, Vega's brief has no argument, indeed no legal authority. And it does not even attempt to show that Judge Wiley committed any error. It is manifestly deficient—and deserving of sanctions.

The holding in *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 32 is apt. There, in ordering $32,000 in sanctions, the Court of Appeal said this: "Given the facts and controlling legal authority, we believe 'any reasonable attorney would agree that th[is] appeal is totally and completely without merit.' [Citation.] Indeed, given . . . appellate counsels' utter failure to discuss the most pertinent legal authority . . . , and their preparation of a grossly inadequate record, we conclude they knew as much, and subjectively prosecuted the appeal for an improper purpose. [Citation.]" (See also *Millennium Corporate Solutions v. Peckinpaugh* (2005) 126 Cal.App.4th 352, 360–363 [appeal "indisputably has no merit"]; *Caro v. Smith* (1997) 59 Cal.App.4th 725, 738–739 [appeal "lack[ed] even arguable merit"]; *Simonian v. Patterson* (1994) 27 Cal.App.4th 773, 785–787 ["[N]o reasonable attorney could have thought this . . . appeal meritorious."].)

Since sanctions are Tsuboi's only remedy for a frivolous appeal (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 797), the typical sanction is to award the attorney fees necessitated by responding to the appeal.  Here, Tsuboi seeks $11,968, fees she asserts were incurred since the August 3, 2015 hearing, plus a penalty.  We will not award any penalty, nor all the fees Tsuboi seeks.

The record reflects that Vega did not file his notice of appeal until September 22, 2015, and did not file his opening brief until November 24.  And Tsuboi filed her respondent's brief on December 23.  We thus conclude that the appropriate sanctions here are the fees incurred from November 24 to December 23, which, based on the invoices submitted by Tsuboi's counsel, total $6,612.00.

## DISPOSITION

The order is affirmed.  Tsuboi shall recover her costs on appeal.  In addition Tsuboi is awarded sanctions against Vega in the amount of $6,612.00, which sanctions are payable within 60 days after this opinion becomes final.  In light of restraining and/or protective orders against Vega, payment of sanctions shall be sent to Tsuboi's attorney of record in this appeal.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Miller, J.

8