Filed 10/10/22  Ting v. Chinsupakul CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANNE TING et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>PANIDA CHINSUPAKUL,<br><br>    Defendant and Appellant. | H049513<br>(Santa Clara County<br>Super. Ct. No. 21CV381110) |

Appellant Panida Chinsupakul challenges the trial court's order granting a preliminary injunction.  She contends that the order must be reversed because it grants all of the injunctive relief the plaintiffs sought in their complaint and encompasses relief not contained in the order to show cause.  We reject Chinsupakul's contentions and affirm the court's order.

## I.  FACTS AND PROCEDURAL BACKGROUND

Chinsupakul had been married to Julian Ting (Julian)[1] since 2001.  Respondents Anne Ting, Jack Ting, and Nicole Ting-Yap (collectively, the Tings) are Julian's parents and sister.  Nicole lives in Malaysia, and Anne and Jack live in Australia.

---

[1] For clarity, we refer to the individual Ting family members by first name.

Julian had a computer data server in his Los Altos home that contained data owned by his parents and sister. The server could communicate with laptops and mobile devices that were paired with it by way of a secure encrypted link. Access to the server required a unique username and password. Only Julian could grant a user access. He granted his sister Nicole access to one partition of the server. Julian also stored other private information belonging to the Tings on the server.

Between October 2019 and October 2020, Chinsupakul accessed Julian's server, MacBook Pro, iPad, and iPhone without his permission, knowledge, or consent and copied, imaged, and photographed private information belonging to the Tings that was stored on these devices. In July 2020, Julian placed the server in a "locked data cage" to which only Julian had access. In October 2020, Julian noticed that the server was shut down for two days while he was in Australia. At that time, Chinsupakul had filed for divorce from Julian but had not yet served Julian with the dissolution petition. While Julian was in Australia, Chinsupakul accessed the server and created for herself a forensic copy of its entire contents.

Chinsupakul's counsel subsequently admitted that Chinsupakul's attorneys possessed copies of information that had been stored on the server. Chinsupakul also possessed photographs of the screen of Julian's MacBook Pro, iPad, and iPhone showing private and confidential information belonging to the Tings that had been stored on the server. Chinsupakul shared information she had taken from the server and from Julian's devices with third parties and used it in her marital dissolution proceedings against Julian.

In March 2021, the Tings filed an action against Chinsupakul for conversion, invasion of privacy, misappropriation of trade secrets, intentional infliction of emotional distress, and related causes of action. They sought both damages and injunctive relief. The Tings' complaint prayed for, among other things, "the return and/or destruction of the information converted and misappropriated by Defendant."

2

On March 18, 2021, the Tings' counsel sent a letter to Chinsupakul's counsel demanding that Chinsupakul cease and desist from using any information from the server and Julian's devices and that she "destroy or return all misappropriated information," certify that she had done so, and identify anyone with whom she had shared the information. The summons and complaint were served on Chinsupakul on May 7, 2021.

On May 20, 2021, the Tings filed an ex parte notice of their application for a temporary restraining order and an order to show cause for a preliminary injunction. This notice enumerated five types of injunctive relief sought by the Tings. Item No. 3 read: "An order instructing [Chinsupakul] to return and/or destroy within five (5) business days all paper and electronic copies of [the Ting's] information which she obtained from Julian Ting's server, MacBook Pro, iPad, or iPhone, and all derivative information derived from it, that is in the possession, custody, or control of [Chinsupakul] and any agents acting on her behalf, including all copies stored on removable media and external drives, as well as the original image files of all photographs [Chinsupakul] took of [the Ting's] information." Item No. 4 sought an order requiring Chinsupakul to certify under oath that she had returned or destroyed the information. The Tings supported their request for a temporary restraining order and a preliminary injunction with declarations from Julian and the Tings. The Tings attached to the notice a proposed order.

The Tings' counsel provided written notification to Chinsupakul's counsel on May 19, 2021 of the May 21, 2021 hearing on the temporary restraining order and set out the five types of relief sought by the Tings. Chinsupakul's counsel filed opposition to the temporary restraining order on May 19, 2021. He argued that some of the information on the server "relat[es] to [Chinsupakul] personally," and therefore she would not agree to delete her forensic copy of all of the information on the entire server, which she claimed could not be deleted or removed selectively. Chinsupakul's counsel argued that the temporary restraining order should be denied because the Tings lacked standing, Penal Code section 502 (unauthorized access to computer data systems) did not apply, and there

3

was no likelihood of harm to the Tings. Chinsupakul's accompanying declaration admitted that she had accessed the server while Julian was in Australia in October 2020.

The Tings replied that Chinsupakul's retention of her forensic copy of the server's entire contents was unacceptable because she "stole this information, and she should not be permitted to maintain any copies of it whatsoever, or force [the Tings] to fight to get it back. If [Chinsupakul] is entitled to this information at all, she must seek it through legal means."

On June 3, 2021, the trial court issued a temporary restraining order that granted the Tings some of the relief they sought and ordered Chinsupakul to show cause on July 15, 2021 as to some of the other types of relief (June 3 order). Neither the temporary restraining order nor the order to show cause included an order that Chinsupakul return or destroy the information or certify that she had done so, although the Tings had sought such orders in their notice and proposed order. The court used the proposed order prepared by the Tings' counsel, which had included the five types of relief they sought, but the court modified the proposed order to cross out the portions related to the return or destruction of the information Chinsupakul had taken.

At the July 15, 2021 preliminary injunction hearing, Chinsupakul's counsel argued that the court's authority was limited to the relief enumerated in the order to show cause. He contended that "[a]nything beyond the order to show cause would be basically a violation of my client's due process rights because she's not being told here is something else that might be issued today beyond the scope of the order to show cause." The court disagreed: "The [c]ourt has broad discretion in the fashioning of appropriate injunctive relief . . . . But just because the [c]ourt deviates from the specific letter of how a moving party has proposed injunctive relief, that doesn't mean the Court's hands are tied in terms of its ability to craft something lesser. It's not an all-or-nothing circumstance." The court rejected Chinsupakul's due process argument and her claim that Penal Code section 502 did not apply. Nevertheless, the court continued the hearing and gave counsel an

4

opportunity to submit briefing addressing "whether the nature of the temporary relief that was requested adequately puts the defendant on notice of the scope of remedies that the plaintiffs are seeking." The hearing was continued to August 26, 2021.

On August 4, 2021, Chinsupakul's counsel filed a brief in which he contended that California Rules of Court, rule 3.1150 precluded the court from granting relief that was not specified in the order to show cause. He claimed that Chinsupakul would be deprived of "her due process rights to be apprised in advance of the hearing of what issues she must be prepared to defend at the hearing." The Tings' counsel filed a brief asserting that Chinsupakul had not been deprived of due process. On August 26, 2021, the hearing was continued at Chinsupakul's counsel's request to September 9, 2021.

At the September 9, 2021 hearing, a different judge presided, and a different counsel (the counsel in her dissolution case) appeared for Chinsupakul. Chinsupakul's counsel argued that Chinsupakul had a right to access the server because it was community property. Counsel addressed the merits of granting the return-or-destroy relief but did not argue that Chinsupakul's due process rights had been violated.

The court found at the hearing that the Tings were "likely to succeed on the merits of their claims." It also found that irreparable harm had been established because Chinsupakul had used the information in the family court action. The court concluded that not requiring Chinsupakul to return or destroy the information "would be condoning [her] conduct." The court told the parties that it would be granting all five types of relief sought by the Tings in their original request for a temporary restraining order, and it directed the Tings' counsel to prepare a proposed order.

On September 14, 2021, the court issued a preliminary injunction. The preliminary injunction ordered Chinsupakul to "return and/or destroy . . . all paper and electronic copies of [the Tings'] information which she obtained from Julian Ting's server, MacBook Pro, iPad, or iPhone, and all derivative information derived from it, that is in the possession, custody, or control of [Chinsupakul] and/or any agents acting on her

5

behalf, including all copies stored on removable media and external drives, as well as the original image files of all photographs [Chinsupakul] took of [the Tings'] information." The order also provided that Chinsupakul was to "certify under oath" that she had done so. The preliminary injunction order further provided that the server itself would "be placed in possession of a neutral third party pending resolution of any and all disputes regarding the proper ownership and possession of the server." The Tings were required to file, and did file, an undertaking of $10,000 before the preliminary injunction issued. Chinsupakul timely filed a notice of appeal from the September 14 order.[2]

## II. DISCUSSION

"The trial courts consider two interrelated questions in deciding whether to issue a preliminary injunction: 1) are the plaintiffs likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant; and 2) is there a reasonable probability that the plaintiffs will prevail on the merits. [Citations.] ' "[By] balancing the respective equities of the parties, [the court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him." ' " (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 206.) "[T]he more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that they allege will occur if the injunction does not issue." (*King v. Meese* (1987) 43 Cal.3d 1217, 1227.)

"In reviewing an order granting a preliminary injunction, we do not reweigh conflicting evidence or assess witness credibility, we defer to the trial court's factual findings if substantial evidence supports them, and we view the evidence in the light most favorable to the court's ruling." (*City of Corona v. AMG Outdoor Advertising,*

---

[2] Chinsupakul filed a motion to augment and an amended motion to augment in this court. Since the documents she seeks to augment the record with were not before the trial court when it issued the preliminary injunction and are not relevant to the issues we resolve in this appeal, we deny these motions.

*Inc.* (2016) 244 Cal.App.4th 291, 298–299.)  We review any legal issues de novo.  (*Id.* at p. 299.)

Chinsupakul does not contest the trial court's finding that the Tings were likely to prevail on the merits at trial.  She makes two contentions in her opening brief.  She argues that the preliminary injunction order was void because it granted the Tings all of the injunctive relief that they sought in their complaint.  She also asserts that the preliminary injunction order improperly granted relief that was not included in the order to show cause.

A.  *Preliminary Injunction Was Not Void*

Chinsupakul asserts that by requiring her to return or destroy the material the trial court erroneously denied her the right to a trial on the merits of the complaint.  However, she identifies no legal authority for her claim that the preliminary injunction was void because it granted all of the injunctive relief sought in the complaint.  Neither of the cases she cites in her opening brief supports this claim.

*Jamison v. Department of Transportation* (2016) 4 Cal.App.5th 356 concerned whether the plaintiff had shown that he was likely to succeed on the merits in his action against Caltrans.  (*Id.* at p. 362.)  Since the preliminary injunction he had obtained would have prevented Caltrans from performing its statutory duty to keep the highway right-of-way clear of encroachments, the Court of Appeal concluded that he could not succeed on the merits.  Accordingly, the preliminary injunction had to be reversed.  (*Id.* at p. 366.)  The opinion did not address whether a preliminary injunction could properly grant temporary injunctive relief identical to the permanent injunctive relief sought in a complaint.

In *Department of Fair Employment & Housing v. Superior Court* (2020) 54 Cal.App.5th 356 (*Department of Fair Employment & Housing*), the Department of Fair Employment and Housing (DFEH) filed a petition based on an administrative complaint against a business and sought a temporary restraining order and a preliminary injunction.

7

(*Id*. at pp. 365–366.) The trial court denied the DFEH's request for a temporary restraining order and a preliminary injunction, and the DFEH agreed to entry of judgment on its petition. (*Id*. at p. 366.) When the DFEH continued to investigate the underlying administrative complaint against the business, the business brought a motion to enforce the judgment, contending that the judgment precluded the DFEH from continuing to investigate the administrative complaint. (*Ibid*.) The trial court granted the motion, and the DFEH sought a writ of mandate to overturn that order. (*Ibid*.)

The Court of Appeal concluded that "the trial court improperly construed its decision on the preliminary injunction request to be a final adjudication of the merits of the underlying administrative complaint." (*Department of Fair Employment & Housing*, *supra*, 54 Cal.App.5th at p. 367.) The Court of Appeal observed: "[A] judgment issued on a [Government Code] section 12974 civil action for provisional relief [(the DFEH's petition)] merely signals the end of *that action*—it is not a final judgment on the potential claims arising from *the administrative complaint* whose merits are evaluated for the limited purposes of deciding entitlement to provisional relief." (*Id*. at p. 390, italics added.) This case, unlike *Department of Fair Employment & Housing*, does not involve an underlying administrative complaint and therefore the case does not support Chinsupakul's claim of error.

Chinsupakul's reliance on *Department of Fair Employment & Housing* is premised not on its holding but on the following language in the opinion: "As a general rule, the granting or denying of a preliminary injunction does not amount to an adjudication of the ultimate rights of the parties. [Citation.] In fact, a court is typically 'without jurisdiction to determine the merits upon the hearing of a motion for a temporary injunction and the orders purporting to do so are void.' " (*Department of Fair Employment & Housing*, *supra*, 54 Cal.App.5th at pp. 390–391.) Chinsupakul concludes from this language that a preliminary injunction mirroring the permanent injunctive relief sought in a complaint is void.

While we agree with Chinsupakul that a court may not resolve sua sponte the merits of an action at a hearing on a preliminary injunction, that did not occur here. The trial court granted the preliminary injunctive relief that the Tings requested but did not resolve the merits of the Tings' action. We reject Chinsupakul's contention that a court may not grant preliminary injunctive relief that is similar or even identical to the permanent injunctive relief sought in the complaint. Chinsupakul has not cited any legal authority for the proposition that preliminary injunctive relief may not mirror the permanent injunctive relief sought in an action.

The weight of authority is to the contrary. In *Integrated Dynamic Solutions, Inc. v. VitaVet Labs, Inc.* (2016) 6 Cal.App.5th 1178, the appellant attacked the preliminary injunction on the ground that "the trial court's preliminary injunction largely mirrors the permanent injunctive relief VitaVet seeks." (*Id.* at p. 1186.) The Court of Appeal rejected this argument. "This is hardly surprising, as ' " '[t]he scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits.' [Citation.]" ' [Citation.] The resulting overlap provides no cause for declaring a preliminary injunction invalid." (*Ibid.*; accord *Family Record Plan, Inc. v. Mitchell* (1959) 172 Cal.App.2d 235, 247.)

In her reply brief, Chinsupakul alters her primary argument and asserts that the trial court abused its discretion in granting the preliminary injunction because there was no showing that it was necessary to prevent interim harm. Although she had stated in her opening brief that the preliminary injunction "was not necessary to avoid further interim harm," she had failed to support this bare statement with any legal argument or citation to authority.

Her reply brief cites *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342 in support of this assertion. *Hamidi* involved a permanent injunction issued "without a showing of likely irreparable injury in an action for trespass to chattels, in which injury to the personal property or the possessor's interest in it *is* an element of the action." (*Id.* at p.

9

1352.)  The case before us is not an appeal from a permanent injunction.  Chinsupakul ignores the procedural posture of this appeal and the fact that the court here properly employed a balancing test in deciding whether to issue preliminary injunctive relief. *Hamidi* is inapposite.

"In deciding whether to issue a preliminary injunction, a court must weigh two 'interrelated' factors:  (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction.  [Citation.]  Appellate review is limited to whether the trial court's decision was an abuse of discretion.  [Citation.]  [¶]  The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction."  (*Butt v. State of California* (1992) 4 Cal.4th 668, 677–678.)

Chinsupakul concedes that it is likely the Tings will prevail on the merits.  The Tings submitted declarations demonstrating that Chinsupakul's continued possession of their personal and business information posed a serious threat to their privacy and to their business interests and was disturbing their personal and business activities.  For her part, Chinsupakul wished to retain the information in order to potentially use it against Julian in her dissolution proceeding, even though she could have utilized appropriate discovery procedures to properly obtain any information to which she was legally entitled.  We see no abuse of discretion in the trial court's determination that the balance of potential-merit and interim-harm factors weighed in favor of granting a preliminary injunction.  Thus, we reject Chinsupakul's challenge to the order based on lack of interim harm.

10

B.  *Due Process Claim Based on the Form of the Order to Show Cause*

Chinsupakul asserts that the preliminary injunction order violated her due process rights because the order to show cause portion of the court's June 3 order did not include all of the relief that the court ultimately granted in its September 14, 2021 preliminary injunction order.

Chinsupakul bases her claim of error solely on the provisions of California Rules of Court, rule 3.1150,[3] which sets out the procedure for obtaining a preliminary injunction.  Rule 3.1150(a) states, "A party requesting a preliminary injunction may give notice of the request to the opposing or responding party either by serving a noticed motion under Code of Civil Procedure section 1005 or by obtaining and serving an order to show cause (OSC).  An OSC must be used when a temporary restraining order (TRO) is sought, or if the party against whom the preliminary injunction is sought has not appeared in the action."[4]  (Rule 3.1150(a).)

Rule 3.1150(c), upon which Chinsupakul specifically relies, describes the form of a proposed order to show cause and temporary restraining order.  It provides:  "The OSC and TRO must be stated separately, with the OSC stated first.  The restraining language sought in an OSC and a TRO must be separately stated in the OSC and the TRO and may not be incorporated by reference.  The OSC must describe the injunction to be sought at the hearing.  The TRO must describe the activities to be enjoined pending the hearing.  A proposed OSC must contain blank spaces for the time and manner of service on responding parties, the date on which the proof of service must be delivered to the court

---

[3] Rule references are to the California Rules of Court.

[4] A temporary restraining order may be granted ex parte, and it will remain in effect only until the date fixed for the noticed hearing on the order to show cause why a preliminary injunction should not issue.  (Code Civ. Proc., § 527; *Biasca v. Superior Court* (1924) 194 Cal. 366, 367.)  A preliminary injunction, unlike a temporary restraining order, requires the posting of an undertaking.  (*Ibid.*)

hearing the OSC, a briefing schedule, and, if applicable, the expiration date of the TRO." (Rule 3.1150(c).)

The Tings' notice and application for a temporary restraining order and a preliminary injunction identified the five types of injunctive relief sought without distinguishing between the types of relief for which they sought a temporary restraining order or a preliminary injunction. The proposed order that was attached to the notice and application identified three types of injunctive relief for which they sought an order to show cause and separately identified five types of injunctive relief for which they sought a temporary restraining order. The temporary injunctive relief sought was the same as that listed in the order to show cause, except that the temporary injunctive relief included two additional types of relief (to which Chinsupakul now objects on appeal): The return or destroy order and the certification order. When the court issued the temporary restraining order and order to show cause on June 3, 2021, it crossed out from the proposed order the return or destroy and certification components.[5]

Chinsupakul's reliance in this appeal on rule 3.1150(c) is misplaced. While one of the purposes of rule 3.1150 is to ensure that a defendant has adequate notice of the injunctive relief that the plaintiff seeks, the requirement that the proposed order separately describe the requested temporary restraining order relief and the requested preliminary injunction relief is largely for the convenience of the court so that it can utilize the proposed order in granting a temporary restraining order and issuing an order to show cause. So long as the notice and the proposed order adequately apprised the defendant of the nature of the injunctive relief being sought, there is "no reason why the grant of limited relief in the [temporary restraining order] should somehow operate to

_____

[5] The court also crossed out the third type of relief for which a preliminary injunction was sought, but it granted that relief as part of the temporary restraining order. That relief, which is not at issue in this appeal, required the server itself to be placed in the possession of a neutral third party.

12

change the scope of the injunctive relief [the party] requested." (*Millennium Corporate Solutions v. Peckinpaugh* (2005) 126 Cal.App.4th 352, 359 (*Millennium*).)

In *Millennium*, the cross-complainants sought and obtained a temporary restraining order and an order to show cause. Although the cross-complainants had sought several types of temporary injunctive relief, the court had granted only some but not all of those types of relief in the temporary restraining order. The plaintiff did not file opposition in response to the cross-complainants' order to show cause. At the preliminary injunction hearing, the plaintiff complained that it had not filed opposition because it believed that only the relief granted by the temporary restraining order would be at issue at the hearing. (*Millennium*, *supra*, 126 Cal.App.4th at pp. 355–356.) The trial court rejected this argument and granted a preliminary injunction that exceeded the relief granted in the temporary restraining order. (*Id.* at p. 358.)

On appeal, the plaintiff claimed that the preliminary injunction was limited to the relief that had been granted in the temporary restraining order. The Court of Appeal rejected this argument, relying upon the fact that the original ex parte request for a temporary restraining order sought the relief ultimately granted in the preliminary injunction. (*Millennium*, *supra*, 126 Cal.App.4th at p. 359.) The court in *Millennium* observed that it could not "credit [the plaintiff's] claim that it 'reasonably believed' because the objectionable relief sought in [cross-complainant's] application [] was denied in the TRO, that requested relief was no longer at issue." (*Ibid.*)

Chinsupakul notes that *Millennium* made no mention of rule 3.1150(c), and she argues that its holding is therefore irrelevant to her due process claim. While *Millennium* did not address rule 3.1150(c), a violation of a rule of court does not by itself establish that a party was deprived of procedural due process so long as she was afforded notice and an opportunity to be heard. (See *Israni v. Superior Court* (2001) 88 Cal.App.4th 621, 634.) Chinsupakul received notice of all of the injunctive relief that the Tings were seeking, and she was fully apprised at the July 15, 2021 hearing that the court would be

13

considering issuing a preliminary injunction granting all of the requested injunctive relief at the continued hearing. Thereafter, she was afforded the opportunity to be heard both in a supplemental brief and at the continued hearing, which occurred nearly two months after the initial preliminary injunction hearing. Moreover, Chinsupakul's counsel did not object on due process grounds at the continued hearing to the court's consideration of all of the requested injunctive relief.

We conclude that Chinsupakul was not deprived of her due process rights by any violation of the formatting requirements of rule 3.1150(c).

### III.  DISPOSITION

The September 14, 2021 order is affirmed. The Tings shall recover their appellate costs. (Cal. Rules of Court, rule 8.278(a)(1).)

_____

                                  Danner, J.

WE CONCUR:

_____

Greenwood, P.J.

_____

Wilson, J.

**H049513**

*Ting et al. v. Chinsupakul*